IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES M. OLVEY, | ) | No. CV-F-06-653 OWW/SMS |
| | ) | |
| | ) | MEMORANDUM DECISION GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| Plaintiff, | ) | SUMMARY ADJUDICATION OF |
| | ) | THIRTEENTH CLAIM FOR RELIEF |
| vs. | ) | AND DENYING DEFENDANTS' |
| | ) | REQUEST FOR SANCTIONS (Doc. |
| | ) | 21) |
| ERROTABERE RANCHES, et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

On May 26, 2006, Plaintiff James M. Olvey filed a Complaint for Damages. Defendants are Errotabere Ranches and Daniel D. Errotabere and Jean Errotabere.

Defendants move for summary adjudication of the Thirteenth Claim for Relief. The Thirteenth Claim for Relief alleges:

> 77. On or about October 1, 1998, OLVEY, acting on behalf of O & A Enterprises, and JEAN entered into a contract for professional consultation services, wherein JEAN would provide consulting services for O & A Enterprises. Pursuant to the contract, JEAN signed a confidentiality agreement, wherein JEAN agreed not to disclose any private, proprietary or confidential information

1

>related to her [sic] services to any third parties even after the contract was terminated.  In exchange for his [sic] services, JEAN was paid $20,000 per year, plus travel expenses.  JEAN provided such consulting services from 1998 through 2004.  O & A Enterprises has assigned its rights under the Confidentiality Agreement to OLVEY.
>
>78.  OLVEY is informed and believes, and thereon alleges, that JEAN has breached the confidentiality agreement by disclosing private, proprietary and/or confidential information protected thereunder and by refusing to return to OLVEY, on demand from O & A Enterprises prior to the assignment alleged above, all of the confidential documents in JEAN's possession to which OLVEY is entitled.

A.  **MOTION FOR SUMMARY ADJUDICATION**.

    1.  **GOVERNING STANDARDS**.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense.  *Id*.  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  *Id*.

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes

demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.*, 809 F.2d at 630. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id*. The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id*. The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995). This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." *Id*. The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *Id*.

        2.   <u>FACTUAL BACKGROUND</u>.

            a.   <u>Defendant's Factual Position</u>.

There is no dispute that Jean entered into a one-year Consultant Agreement with O & A Enterprises on October 1, 1998.

3

**Section 4 of the Consultant Agreement provided:**

> **Consultant understands that in the performance of service hereunder Consultant may originate or obtain knowledge of 'confidential information,' as hereinafter defined, relating to the business of O & A. As used herein, 'confidential information' (including, without limitation, any plant material, formula, pattern device, plan, process or compilation of information) which (1) [sic] is, or is designed to be, used in the business of O & A or results from its research and/or development activities, (ii) is private or confidential in that it is not generally known or available to the public and, (iii) gives O & A an opportunity to obtain an advantage over competitors who do not know or use it.  Consultant shall not, without the written consent of the President of O & A, (a) use or disclose any such confidential information outside of O & A, (b) publish any article with respect thereto, or (c) except in the performance of his services hereunder, remove or aid in the removal from the premises of O & A, or any other locations being utilized by O & A, any such confidential information or any property or material which relates thereto.  The provisions of this paragraph shall survive the completion or termination of this agreement.**

**By letter dated December 22, 2005, Olvey wrote to Jean as follows:**

> **When you were a Consultant with O & A Enterprises, you signed a Confidentiality Agreement on or about October 1, 1998.  I have some concern that agreement may have been violated.**
>
> **Nonetheless, since you are no longer serving as a consultant with O & A, and since the materials in your possession are proprietary in nature, I am writing to ask that you immediately return all O & A related materials (e.g., documentation, materials, equipment) ....**

4

>Please send the requested materials no later than the close of business on December 29, 2005 and confirm for me in writing that the materials you are sending represent all of the O & A related materials in your possession, custody, or control.

On December 23, 2005, Gary Sawyers, counsel for Defendants, emailed Kurt Vote, counsel for Plaintiff, and stated in pertinent part:

>Jean Errotabere has not violated any obligations he had to Mr. Olvey, and does not believe that he has any materials belonging to Mr. Olvey in his possession. However, I have asked him to again check his files to confirm that fact. If he discovers any O&A materials, they will be promptly returned.

By Declaration in support of this motion, Defendant Jean Errotabere avers in pertinent part:

>2. I have performed a diligent search for any confidential materials relating to O&A or Mr. Olvey and have not located any such documents in my possession, custody, or control.

During his deposition taken on May 16, 2007, Plaintiff testified in pertinent part:

>Q. Why did you make this request [in the December 22, 2005 letter to Jean]?
>
>A. We had - we were obviously aware that Jean had seven or eight years of documentation on the activities that he conducted for O&A. And we requested that he return it.
>
>Q. What documents are you referring to?
>
>A. All the permit requests, the crop improvement certification requests, any communication. There's a lot of paperwork in California, so we figured he had an entire file filled with it or should have.

5

|   |   |
|---|---|
| 1 | Q. Do you know if he had any of those documents? |
| 2 | |
| 3 | A. He certainly was in possession of those as we went through each activity. |
| 4 | Q. Do you have any knowledge or evidence that he still had any of those documents as of December 22nd, 2005? |
| 5 | |
| 6 | A. We're not aware of that. |
| 7 | Q. So you have no evidence that he still had those documents as of December 22nd, 2005? |
| 8 | |
| 9 | A. We have no way of knowing whether he does or does not. |
| 10 | ... |
| 11 | Q. As you sit here today, do you have any evidence that Jean still had any of those documents as of December 22nd, 2005? |
| 12 | |
| 13 | ... |
| 14 | THE WITNESS: I have no idea. |
| 15 | BY MR. IVY: Q. Actually, it's a 'yes' or 'no,' you have or you don't. I know you think certain things, or you have no idea. You either have evidence or you don't. That's not going to forever bar you, but you either have evidence that he had the documents as of then or you don't. I'm asking you which is it? |
| 19 | |
| 20 | A. He had the documents at one time. We're not certain as to whether he has them now. |
| 21 | Q. Do you have any evidence that he had them as of December 22nd, 2005? |
| 22 | |
| 23 | A. No. |
| 24 | Q. Do you believe Jean breached the agreement? |
| 25 | A. As we said in this letter, we had some concerns that the agreement may have been violated. |
| 26 | |

```
 1    Q.  Do you know if he had any of those
          documents?
 2
      A.  He certainly was in possession of those
 3        as we went through each activity.

 4    Q.  Do you have any knowledge or evidence
          that he still had any of those documents as
 5        of December 22ⁿᵈ, 2005?

 6    A.  We're not aware of that.

 7    Q.  So you have no evidence that he still had
          those documents as of December 22ⁿᵈ, 2005?
 8
      A.  We have no way of knowing whether he does
 9        or does not.

10    ...

11    Q.  As you sit here today, do you have any
          evidence that Jean still had any of those
12        documents as of December 22ⁿᵈ, 2005?

13    ...

14    THE WITNESS: I have no idea.

15    BY MR. IVY: Q.  Actually, it's a 'yes' or
          'no,' you have or you don't.  I know you
16        think certain things, or you have no idea.
          You either have evidence or you don't.
17        That's not going to forever bar you, but you
          either have evidence that he had the
18        documents as of then or you don't.  I'm
          asking you which is it?
19
      A.  He had the documents at one time.  We're
20        not certain as to whether he has them now.

21    Q.  Do you have any evidence that he had them
          as of December 22ⁿᵈ, 2005?
22
      A.  No.
23
      Q.  Do you believe Jean breached the
24        agreement?

25    A.  As we said in this letter, we had some
          concerns that the agreement may have been
26        violated.
```

1       **Q.  What were your concerns?**

2       **A.  We were working on proprietary material,
        and he was privy to that information.**

3
        **Q.  Which proprietary material are you
4       referring to?**

5       **...**

6       **THE WITNESS: We are getting utilities patents
        right now, so I can give you the preliminary
7       utility patent requests once they're out.**

8       **...**

9       **Q.  I'm actually referring to what
        proprietary material do you think Jean had or
10      disclosed as the basis for your claim?**

11      **A.  That's what we're referring to, two
        patent requests that we are in the process of
12      making.**

13      **Q.  What did the patent request [sic]
        generally cover?**
14
        **A.  Some of the material in the nursery.**
15
        **Q.  Do you have any evidence that Jean has
16      disclosed any of your proprietary material?**

17      **A.  Not to my knowledge.**

18  **[Olvey Dep. 59:23-62:13]**

19      **Plaintiff's response to Defendants' Interrogatory No. 18,**

20  **which requested that Plaintiff state all facts upon which his**

21  **claim that Jean breached the Confidentiality Agreement, states:**

22          **Prior to the institution of this litigation,
            Plaintiff requested that Mr. Errotabere
23          verify in writing that he had not violated
            the Confidentiality Agreement, that he did
24          not possess any confidential information, and
            asking that Mr. Errotabere return all
25          confidential documents to Plaintiff.  Mr.
            Errotabere refused to do so.  Therefore, in
26          light of the parties six year relationship,**

the fact that Mr. Errotabere was privy to
confidential information and documents, and
that he has refused to confirm that he does
not possess confidential information,
Plaintiff can only conclude that he is in
possession of such material and refuses to
return it as requested.

    b. <u>Plaintiff's Factual Position</u>.

In opposing summary judgment, Plaintiff refers to the deposition testimony of Jean Errotabere:

> BY MR. LITTLEWOOD: Q.  And during the time in
> which you acted as a consultant for O&A
> Enterprises, did you receive any information
> that was confidential?
>
> ...
>
> THE WITNESS: I don't know what that would be.
> Everything he discussed with me, he discussed
> pretty much in front of my brother, too, so
> ...
>
> BY MR. LITTLEWOOD: Q.  Well, I'm thinking of,
> did you receive any documents from O&A
> Enterprises discussing its seeds or any of
> the experimentation they were doing?
>
> A.  I have nothing like that.
>
> Q.  Did you at any time receive any
> documentation from O&A Enterprises in your
> capacity as a consultant?
>
> A.  Other than this [the Consultant
> Agreement], no.
>
> Q.  Did you ever communicate with Mr. Olvey
> via E-mail?
>
> A.  No.
>
> Q.  Did you record those conversations?
>
> A.  No.
>
> Q.  Mr. Olvey ever provide you with
> literature regarding any of the seeds he was

1  experimenting on?

2  A.  No, other than what he faxed us that he was going to be planting.  And a lot of stuff
3  that was earlier just had numbers on there, I didn't know what they were, what varieties
4  they were, or even what type of cotton it was, until he planted it.

5  
6  Q.  Did you keep that documentation that he had faxed you?

7  A.  Some.  Some I threw out because once we got done with the planting, they were
8  meaningless to me, or for anybody else.

9  Q.  And you indicate that some of it was thrown out.  Was any of it kept?

10  
11  A.  I can't find anything.

12  Q.  Where did you look?

13  A.  In my office.  I didn't have a specific O&A file that I kept, or anything.  Most of
   it I threw out when I cleared my desk,
14  because it was old information.

15  Q.  Were you ever provided any information on results from testing that was done by O&A on
16  any of its seeds?

17  A.  No, he never gave me that information.

18  ...

19  Q.  Now, in terms of confidentiality provisions under this agreement, did you
20  understand that any information that you were receiving in your capacity as a consultant
21  was to remain confidential?

22  ...

23  THE WITNESS: I never discussed this with anybody else.
24  
   BY MR. LITTLEWOOD: Q.  I guess my question
25  was, was it your understanding when you entered into this agreement that any
26  information you obtained as a consultant was

|   |   |
|---|---|
| 1 | to remain confidential? |
| 2 | A.   Yes. |
| 3 | ... |
| 4 | Q.   And did you ever disclose any of the information that you did obtain in your capacity as consultant to any third party without first obtaining Mr. Olvey's permission? |
| 7 | A.   Not that I'm aware of. |
| 8 | Q.   And did you retain any of the materials that you received in your capacity as a consultant after this agreement ended? |
| 10 | ... |
| 11 | A.   No, we don't have anything of his. |
| 12 | Q.   Has Mr. Olvey ever requested you to return any materials that you may have that you received pursuant to this agreement? |
| 14 | A.   We - we don't have any.  He never did ask if we had any of his materials.  We don't have any of his materials. |
| 16 | Q.   Okay.  My question though is, did he ever specifically ask you to return any materials that you may have? |
| 18 | A.   I don't remember. |
| 19 | Q.   And as you sit here today, your testimony is that you don't have any such materials. Do you have any recollection of actually providing him any materials? |
| 22 | A.   If we had, we would have definitely given it back to him, but he never left any seed at our place.  He always took it. |
| 24 | Q.   Other than seed, were there any other materials that he either asked for or that you had that you would have returned? |
| 26 | A.   He had some old parts for his cotton picker we returned to him, and that was about |

10

**it.**

**[Jean Errotabere Depo., 92:6-98:15].**

Plaintiff also submits his Declaration in which he avers in pertinent part:

> 9. Throughout this approximate 7 year consulting relationship, O & A Enterprises provided Jean Errotabere with confidential and proprietary information relating to the experimental seed being planted on Errotabere Ranches property. The following categories of information were provided to Jean Errotabere either by me, or at my direction, on behalf of O & A Enterprises: (1) field plans; (2) seed increase contracts; (3) California crop improvement paperwork and applications; (4) permits (planting and transportation); and (5) correspondence pertaining to planting of experimental seed and the harvesting of cotton derived from experimental seed.
>
> 10. The above categories of information provided to Jean Errotabere identify the materials planted by type, variety and volume by area. Such information further disclosed what varieties were grown, where they were grown and when they were grown. Furthermore, the correspondence sent to Jean Errotabere would contain information coordinating the planting of given varieties, sought to ensure isolation and in many instances contained genetic-related information concerning the specific type or variety of seed that was the subject of the correspondence.
>
> 11. By my estimate, the volume of confidential information provided to Jean Errotabere could fill approximately one to one and a half standard file cabinets.
>
> 12. Shortly after Jean Errotabere's consulting relationship with O & A Enterprises ended in approximately 2004, I requested in writing, on behalf of O & A Enterprises, that Mr. Errotabere return all of the confidential information that had been provided to him pursuant to the Consulting

> Agreement ....
>
> 13. Neither Jean Errotabere, nor anyone on his behalf, has returned to O & A Enterprises or me any of the confidential information as described above that was provided to him. Mr. Errotabere has never confirmed that such information was destroyed. I understand that he now claims in this action that he has performed a diligent search and that he does not have within his possession, custody or control any confidential materials of either me or O & A Enterprises.
>
> 14. Because of the competitive nature of the cotton industry, and the fact that I wanted to protect the time, money and resources I had invested, both personally and through O & A Enterprises, in the research and development of various seed types and varieties, I wanted assurances from Jean Errotabere that he would abide by the confidentiality provisions contained in the Consulting Agreement. He refused to provide such assurances, instead opting to state that he did not have any confidential information in his possession. This response was evasive and insufficient to satisfy me that Jean Errotabere intended to abide by the terms of the Consultant Agreement.

**3. MERITS OF MOTION.**

Defendants argue that they are entitled to summary adjudication of the Thirteenth Cause of Action because they have presented evidence that Jean did not possess any confidential information as of December 22, 2005 and that Plaintiff has no evidence to the contrary.

Plaintiff responds that there is sufficient evidence to create issues of material fact from which an inference that Jean breached the confidentiality provision can be shown:

> Such an inference can be drawn because the evidence demonstrates (1) that a significant

>               quantity of confidential documents were
>               provided to Defendant by Plaintiff, (2) that
>               the parties' Consulting Agreement ...
>               provided that the materials given to Jean
>               were to remain confidential, (3) that before
>               suit was filed, Defendant refused to account
>               for the whereabouts of the documents in
>               question, (4) that Defendant has only stated
>               now that the documents are not in his
>               possession, custody, or control - but (a) has
>               been unable to state whether, where, when and
>               how the documents were destroyed or discarded
>               and (b) has not yet denied having given or
>               sold the documents to a third party,
>               including (but not limited to) a competitor
>               of Plaintiff's or Errotabere Ranches.

Plaintiff has not presented material disputed facts to negate summary adjudication of the Thirteenth Cause of Action. Jean's attorney, acting as his agent, advised Plaintiff's attorney in late December 2005 that Jean did not have any disputed materials but that he would look again. Jean testified at his deposition and avers in his declaration that he does not have any such materials. He testified at his deposition that he did not provide any materials to any third parties. Plaintiff testified at his deposition that he has no evidence that Plaintiff disclosed any confidential materials to any third party. In contradiction to this evidence is Plaintiff's speculation that Jean "must have" such information because of its volume. Plaintiff has no evidence that Jean disclosed confidential information to third parties and no evidence that Jean has retained any confidential information. In order to avoid summary judgment, the opposing party's evidence must be more than the "mere existence of a scintilla of evidence in

support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." Plaintiff has not made the requisite showing.

Defendant's motion for summary adjudication of the Thirteenth Cause of Action is GRANTED.

B.  **REQUEST FOR SANCTIONS**.

Defendants move for sanctions pursuant to 28 U.S.C. § 1927 and pursuant to the Court's inherent power.

28 U.S.C. § 1927 provides in pertinent part:

> Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions pursuant to Section 1927 may be imposed on a pro per party. *Wages v. I.R.S.*, 915 F.2d 1230, 1235-1236 (9th Cir. 1990), *cert. denied*, 498 U.S. 1096 (1991). Section 1927 "is concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Rider*, 447 U.S. 752, 762 (1980). Section 1927 applies only to unnecessary filings and tactics once a lawsuit has begun. *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). The imposition of sanctions pursuant to Section 1927 requires a finding that the party to be sanctioned acted recklessly or in bad faith. *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983). A filing need not be entirely frivolous to warrant sanctions under Section

14

1927.  *Lone Ranger Television v. Program Radio Corp.*, 740 F.2d 718, 727 (9th Cir. 1984).  As explained in *In re Keegan Management Co., Securities Litigation*, *id.*, 78 F.3d at 436:

> [S]ection 1927 sanctions 'must be supported by a finding of subjective bad faith.' ... Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.' ... For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass.  Thus, while it is true that reckless filings may be sanctioned, and nonfrivolous filings may also be sanctioned, reckless nonfrivolous filings without more, may not be sanctioned.

The inherent powers of federal courts are those that "'are necessary to the exercise of all others.'" *Roadway Express, Inc. v. Piper*, *supra*, 447 U.S. at 764.  Conduct that is "tantamount to bad faith" is sanctionable.  *Id.* at 767.  "'For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorneys' fees."'"  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith.  Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper

15

purpose." *Id.* at 994. The court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith before imposing sanctions pursuant to the court's inherent power. *Primus Automotive Financial Services v. Batarse*, 115 F.3d 644, 648-649 (9th Cir. 1997).

Defendants argue that sanctions are appropriate because the evidence shows that Plaintiff and his counsel knew they had no evidence to support the Thirteenth Claim for Relief at the time of Plaintiff's deposition and interrogatory response, yet refused to dismiss the claim even after Defendant agreed to provide a Declaration from Jean that he had no confidential materials in exchange for dismissal of the claim for relief. Defendants assert that they had no choice but to bring this motion for summary adjudication and that Plaintiff's knowing pursuit of a frivolous claim constitutes "bad faith" litigation.

In opposing this request, Plaintiff submits the Declaration of Kurt Vote:

> 5. The factual basis for the Thirteenth Claim for Relief in Plaintiff's Complaint relates to the mysterious inability of Defendant ... Jean ... to account for what has been represented to me to be a significant quantity of confidential documents that were provided to him by Plaintiff over the course of Jean's multi-year tenure as a paid consultant for Plaintiff. Even before this lawsuit was filed, I attempted to secure from Jean's former counsel, Gary Sawyers, a sworn statement from Jean regarding the disposition of the confidential documents - which would (if provided) have resolved the issue; however, Jean steadfastly refused to provide any information, let alone information under

16

oath, about the whereabouts of the documents discussed below. As a result, had [sic] at the time suit was filed, and still have, what I consider a reasonable, good faith belief that Jean violated the terms of his consulting agreement with Plaintiff.

6. Plaintiff's business involves the development of new types of cotton seed. As it has been explained to me, the highly-competitive cotton industry is on a constant lookout for new varieties of cotton seeds which will improve the quality and quantity of material produced, as well as provide collateral benefits (including disease resistance, drought tolerance, etc.). Plaintiff is one of the members of a select fraternity of individuals who are involved in the creation, development, and testing of new varieties of cotton seed. Successful varieties of new seeds can be patented and the resulting technology licensed for many millions of dollars to large seed producers and cotton companies. The confidential information developed as part of Plaintiff's business has significant independent economic value.

7. During one of my first meetings with Plaintiff, he provided me with a copy of a Consulting Agreement between Jean and O&A Enterprises, Inc. - a company owned by Plaintiff ... Plaintiff indicated that he had not only paid Jean a yearly stipend pursuant to the Consulting Agreement but that, during the course of the parties' relationship, Plaintiff had provided what he considered to be highly confidential documents to Jean which included, but were not limited to, field plans, seed increase contracts, crop improvements, permits (for planting and transportation), and correspondence regarding the type variety and genetic make-up various [sic] seeds provided to Defendant for the test plot. Plaintiff further indicated that he had requested a return of the documents when the parties' relationship collapsed but had never been able to get a 'straight answer' from Jean as to the whereabouts or status of the documents. Plaintiff was concerned that the documents would be given

or sold by Jean to a competitor of Plaintiff's in the cotton seed development business. As a result, during my communications with Mr. Sawyers before suit was filed, I attempted to secure a statement from Jean as to the status of the documents - even if only to confirm that they had been discarded. Through counsel, Jean steadfastly refused to provide the confirmation that we had requested.

8. During Jean's deposition, ... Jean was questioned by my partner, William H. Littlewood, regarding the documents. During the deposition, Jean testified inconsistently and evasively, including that the did not receive confidential information from O & A Enterprises, and that whatever they had they returned to Mr. Olvey.

9. I believe that Jean has failed to offer a reasonable explanation for his inability to produce the confidential documents requested. The Consulting Agreement provides that Jean will not use, disclose, remove or aid in the removal of any confidential materials provided to him by O & A ... Plaintiff's sworn discovery responses have established that a significant quantity of documents were provided to Jean. Jean remains unable to account for the documents. While he states now that the documents are not in his possession, custody, or control, he has been unable to state whether, where, when, and how the documents were destroyed or discarded. Additionally, he has not yet denied having given or sold the documents to a third party, including (but not limited to) a competitor of Plaintiff's or Defendant ERROTABERE RANCHES ...

10. Based on the testimony developed to date, it is my good faith belief that the evidence demonstrates (1) that a significant quantity of confidential documents were provided to Jean by Plaintiff, (2) that the parties' Consulting Agreement ... provided that the materials to be given to Jean were to remain confidential and would be returned to Plaintiff on demand, (3) that before suit was filed, Jean refused to account for the

> whereabouts of the documents in question, (4) that Jean has only stated now that the documents are not in his possession, custody, or control - but (a) has been unable to state whether, where, when, and how the documents were destroyed or discarded and (b) Jean has not yet denied having given or sold the documents to a third party ... As a result of the foregoing, I believe a reasonable jury could infer, after weighing the parties' testimony and assessing the credibility of the witnesses, that Jean has breached the terms of the Consulting Agreement. Consequently, I believe that the Thirteenth Claim for Relief is meritorious. None of the actions that I have taken in this case, relative to the Thirteenth Claim for Relief, or otherwise, have been taken in bad faith or to vexatiously multiply these proceedings.

Defendant's request for sanctions is DENIED. Defendant's showing is not persuasive that Plaintiff's pursuit of the Thirteenth Claim for Relief was in bad faith or reckless within the meaning of the standards set forth above.

## CONCLUSION

For the reasons stated above:

1. Defendants' motion for summary adjudication of the Thirteenth Cause of Action is GRANTED and Defendants' request for sanctions is DENIED.

2. Counsel for Defendants shall prepare and lodge a form of order that the rulings set forth in this Memorandum Decision within five (5) days following the date of service of this decision.

IT IS SO ORDERED.

Dated:   February 15, 2008              /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE