1

2

3

4

5

6               UNITED STATES DISTRICT COURT

7               EASTERN DISTRICT OF CALIFORNIA

8

9  JAMES A. OLVEY, an individual,  )    1:06-cv-0653 OWW
                                    )
10               Plaintiff,         )    PRETRIAL ORDER
                                    )
11      v.                          )    Motion in Limine Date:
                                    )    3/27/08 12:15 Ctrm. 3
12 ERROTABERE RANCHES, a California )
   partnership; DANIEL D.           )    Trial Date: 4/1/08 9:00
13 ERROTABERE, an individual; JEAN  )    Ctrm. 3 (JT-3 days)
   ERROTABERE, an individual,       )
14                                  )
                 Defendants.        )
15 _____ )

16

17            I.   JURISDICTION AND VENUE

18      1.   Pursuant to 28 U.S.C. § 1332, this Court has

19 jurisdiction over this matter because Plaintiff, on the one hand,

20 and Defendants, on the other hand, are citizens of different

21 states and the amount in controversy exceeds Seventy-Five

22 Thousand Dollars ($75,000) exclusive of interest and costs.

23 Venue is proper, under 28 U.S.C. § 1391, in this district and

24 division because the Defendants reside in and/or do business

25 within this district and division.  Moreover, the agreements at

26 issue herein were entered into and to be performed within this

27 district and division.  These matters are undisputed.

28 ///

                          1

**II.   JURY/NON-JURY**

1.   Plaintiff has demanded trial by jury.

**III.   FACTS**

**A.   Undisputed Facts**

1.   That Defendants entered into a contract with the Borbas on July 1, 2004, the terms of which are set forth in their entirety in Exhibit "A" to the Complaint, for the purchase of 133 acres (Section 36) with an option to purchase an additional 320 acres (the SE 1/4 of Section 2 (160 acres), and the NE 1/4 of Section 2 (160 acres)).

2.   The terms of the contract between the Borbas and Defendants further stated "the purchase price for the Sale Property and the Crescent Stock (the "Purchase Price") shall be $450,000, provided that if Buyer elects to purchase the Exhibit "B" Property in accordance with Section 1(b) of this Agreement, the Purchase Price shall be $1,344,000."

3.   That Plaintiff and Defendants entered into a contract on August 30, 2004, the terms of which are set forth in Exhibit "B" to the Complaint, representing an assignment of the Defendants' right to purchase the SE 1/4 of Section 2 [161 acres], should Defendants elect to proceed with the purchase of all three parcels from the Borbas.

4.   The terms of the Assignment provided that "the terms of the Sale Agreement [between the Borbas and the Defendants] are incorporated," that the "Assignee acknowledges that it has received and thoroughly reviewed the Sale Agreement and is satisfied with the terms thereof.  Assignee has also had an opportunity to inspect the Property and is satisfied with respect

2

to the condition thereof" and that "the Assignee takes the assignment of the Sales Agreement and the Escrow 'as is' and 'where is' with no representations or warranties from Assignor with respect to the Sale Agreement or the value or condition of the Property."  The terms of the Assignment also provided that "This Assignment and items incorporated herein (including without limitation to the Sale Agreement) contain all of the agreements of the parties with respect to the matters contained herein, and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose."

5.    There is no functioning domestic well on the 161 acre parcel of land owned by Plaintiff.

6.    After the close of escrow, Plaintiff and Defendants discussed Defendants providing Plaintiff with a domestic water supply for a fee.

7.    After no agreement was reached between the parties, Defendants shut off the domestic water supply to Plaintiff's property.

8.    Once the domestic water supply was shut off, the landscaping on the domestic portion of Plaintiff's parcel of land began to deteriorate.

9.    There was a yearly course of dealing between Plaintiff and Defendants, wherein Plaintiff would plant cotton on property farmed by Defendants, with Defendants planting the seeds.

10.    In November of 2004, Defendants planted wheat on the 161 acre parcel acquired by Plaintiff that could not be harvested until in or about July of 2005.

11.    The fair market rental value of the land where the

3

wheat was planted for the planting season of the wheat crop,
including the use of water, was $24,025, and Defendants have not
paid Plaintiff that or any other amount of rent.

12.   Defendants were granted an easement that allowed them
to transport water across Plaintiff's property in or about April
1, 2005.

13.   The sale closed, and Plaintiff took ownership of the
property, on April 1, 2005.

B.   Disputed Facts

1.   Whether Defendants represented to Plaintiff that there
was an operating domestic well on the 161 acre parcel.

2.   Whether Defendants improperly planted a wheat crop on
the parcel purchased by Plaintiff, which prevented Plaintiff from
planting a cotton crop on that parcel.

3.   Whether Plaintiff was aware and agreed that wheat would
be planted on the 161 acres (rather than cotton) for the 2004-
2005 crop season.

4.   Whether Defendants violated the terms of the easement.

5.   Whether Plaintiff actually sent invoices to Defendants
in September 2003 for the cotton seed Plaintiff claims was sold
to Defendants in March of 2003, and whether Defendants received
those invoices in or around September 2003.

6.   Whether Defendants had a contractual obligation to pay
for the cotton seed variety OA-353 which was allegedly invoiced
by Plaintiff in September of 2004.   Defendants further dispute
this fact on the ground that Plaintiff, previously in this
litigation, asserted that this variety was invoiced in September
2003, not September 2004.

4

1    7.    Whether Plaintiff sold and delivered cotton seed
2  variety OA-249 to Defendants in March 2003.

3    8.    Whether Defendants had a contractual obligation to pay
4  for the cotton seed variety OA-249 which was allegedly invoiced
5  by Plaintiff in September of 2003.

6    9.    Whether, in or about March, 2003, OA-249 seed was
7  delivered to Defendants.

8    10.    Whether Plaintiff and Defendants had established a
9  course of dealing such that Plaintiff did not charge Defendants
10  for the cotton seed Plaintiff provided Defendants for planting in
11  exchange for Defendants allowing Plaintiff to use its land and
12  infrastructure for his nursery free of charge.

13    11.    Whether Defendants damaged or failed to properly
14  maintain the ag production well on Plaintiff's land from April 1,
15  2005, until they left the Property in July, 2005.

16    12.    Whether Defendants used the ag production well on
17  Plaintiff's land from April 1, 2005, until they left the property
18  in July 2005 to irrigate more than just the wheat crop they had
19  planted on Plaintiff's land.

20    13.    Whether, if Defendants used the ag production well on
21  Plaintiff's land to irrigate more than just the wheat crop they
22  had planted on Plaintiff's land from April 1, 2005, until they
23  left the property in July 2005, Defendants have failed to pay
24  Plaintiff for the reasonable market value of the water that
25  Defendants used beyond that which would be considered encompassed
26  by Plaintiff's rent claims.

27    14.    Whether Plaintiff was aware there was no domestic well
28  on the property prior to the close of escrow.

1   **15.   Whether Plaintiff made any oral or written demands for**
2   **payment for the OA-249 or OA-353 seed from September 2003 until**
3   **August 2006.**

4   **16.   Whether the air vents connected to the irrigation pipe**
5   **subject to the easement were already on the property before**
6   **Plaintiff purchased it.**

7   **17.   Whether Plaintiff was prevented from planting his 2005**
8   **cotton crop due to the presence of wheat planted on the property.**

9   **18.   Whether, had a cotton crop been able to be planted on**
10   **the 161 acre parcel for the 2005 season, such a crop would likely**
11   **have provided an economic return to Plaintiff.**

12   **19.   Whether the pipeline and vents related to the easement**
13   **are located on Plaintiff's property.**

14   **20.   Whether, in or about March, 2004, OA-353 seed was**
15   **delivered to Defendants.  Defendants dispute whether Plaintiff**
16   **has made this claim at all to date in this action (see Disputed**
17   **Fact #6, above).**

18   **21.   Whether upon assuming ownership of the property on**
19   **April 1, 2005, Plaintiff gave Defendants access to the ag**
20   **production well on his property as a water source for their wheat**
21   **crop only.**

22                    **IV.   DISPUTED EVIDENTIARY ISSUES**

23        **Plaintiff's**

24   **1.   Exclude mention of the dismissal of first through**
25   **fourth claims for relief.**

26   **2.   Exclude mention of the Crescent stock dispute, purchase**
27   **price discrepancy, failure to disclose the true purchase price,**
28   **etc. (i.e., the factual claims which underlie the now dismissed**

                                **6**

first through fourth claims for relief).

3.   Exclude discussion (for any reason, including "impeachment") of disputed and allegedly false testimony of Plaintiff regarding the timing of disclosure by Defendants of the purchase price discrepancy and Plaintiff's response to same.

4.   Exclude the voicemail message from Plaintiff and transcript of same.

5.   Exclude mention of other litigation involving Plaintiff or O&A.

6.   Exclude evidence re parties'/witnesses' reputations for truthfulness or honesty (or lack thereof).

7.   Exclude mention of size of McCormick Barstow LLP and/or the number of attorneys that have been involved in representing Plaintiff in this case.

8.   Exclude non-party witnesses from the courtroom before they testify and are excused as witnesses.

9.   Exclude mention of the relative wealth of the parties.

10.  Exclude all evidence, documents, or witnesses not disclosed by Defendants in discovery.

11.  Exclude/preclude Defendants from arguing or introducing evidence of any settlement negotiations in this matter between Plaintiff, on the one hand, and Defendants, on the other.

**Defendants'**

1.   Preclude any party from arguing or introducing any oral or written evidence or testimony concerning any settlement offers or negotiations between the parties or their attorneys, other than: (1) evidence of Plaintiff's notice of a lack of domestic well on the property prior to close of escrow and the parties'

7

1  discussion of Defendants providing domestic water for Plaintiff's
2  property and (2) evidence of Plaintiff's knowledge of wheat
3  planted on property prior to close of escrow.

4      2.   Preclude any argument or evidence of copies of the
5  September 2003 invoices in the absence of Plaintiff providing
6  access to the original of those documents including but not
7  limited to exclusion under the Best Evidence Rule.

8      3.   Preclude any argument, testimony or evidence of any
9  representations, agreements, or understandings that the property
10 contained a functioning domestic well.

11     4.   Preclude any argument, testimony or evidence of any
12 representations, agreements, or understandings that Defendants
13 would plant cotton on the Property for the 2004-2005 crop season.

14     5.   There exist disputes concerning introduction of
15 evidence concerning dismissed causes of action, and of tape and
16 transcript of voicemail from Plaintiff, date and extent of notice
17 of the Purchase and Sale Agreement by Plaintiff.

18     6.   Preclude any argument, expert or lay testimony or
19 evidence regarding the cause of any alleged damage to the well,
20 pump, engine, gear head, and well hole, other than lay testimony
21 concerning (1) the Borbas' repairs to the well in November 2004,
22 (2) Defendants' possession and use of the well in 2005, and (3)
23 evidence concerning the condition of the well when Plaintiff
24 first sought to use it in March of 2006.

25     7.   Preclude any argument, testimony or evidence regarding
26 the amount or value of water from Plaintiff's ag well used by
27 Defendants to irrigate crops other than the wheat crop on
28 Plaintiff's property.

8.   Preclude any mention or evidence concerning any other litigation involving any of the Defendants.

9.   Exclude non-party witnesses from the courtroom before they testify and are excused as witnesses.

10.   Exclude mention of the wealth of the parties.

11.   Exclude all evidence, documents or witnesses (lay and expert) not disclosed by Plaintiff in discovery, including but not limited to any evidence, argument and testimony related to documents first disclosed and produced on February 23, 2008, (OA00254-289) and February 25, 2008.

12.   Preclude Plaintiff from calling attorney Gary Sawyers as a witness in this matter, or eliciting any evidence or testimony regarding Mr. Sawyers' statements or conduct in connection with these matters.

13.   Preclude any mention, evidence, or argument concerning alleged sale of OA-353 in September 2003, and any alleged damages sought as a result of those alleged sales, as Plaintiff has not produced any invoice or writing evidence a sale that occurred more than two years prior to the filing of the Complaint.

14.   Preclude any mention or evidence concerning Plaintiff's payment of undisputed amounts owed to Defendants which are not the subject of the Complaint nor raised in the answer as a defense or set-off.

15.   Preclude any mention, evidence or argument that the failure of engine and/or well could not have occurred in the absence of negligence.

16.   Preclude any mention, evidence or argument Plaintiff is entitled to the presumption of negligence pursuant to the theory

1 | or doctrine of *res ipsa loquitur*.

2 |     17.   Preclude any mention, evidence or argument regarding
3 | photographs produced by Plaintiff in this action.

4 |     The above evidentiary matters were prepared prior to
5 | receiving additional documents and theories of damages previously
6 | withheld by Plaintiff, most of which Defendant's counsel received
7 | only today.   In the event the Court does not exclude all of the
8 | belatedly disclosed evidence, Defendants reserve their right to
9 | supplement this list accordingly.

10 |               V.   SPECIAL FACTUAL INFORMATION

11 |     1.   The special factual information required by Local Rule
12 | 16-218(6) is specified above, where appropriate, in either the
13 | undisputed facts or disputed factual issues sections.   (*See,*
14 | *supra*, Sections III and IV.)   Additional factual information is
15 | provided below in connection with the parties' respective
16 | sections concerning points of law.

17 |               VI.   RELIEF SOUGHT

18 |     <u>Plaintiff</u>

19 |     1.   Plaintiff seeks compensatory damages in the sum of
20 | $24,025, which represents the fair market rental value of the
21 | land upon which Defendants planted their wheat crop, plus
22 | interest at the legal rate of 10% per annum from January 1, 2005,
23 | which has accrued in the amount of $6,803.72, as of October 24,
24 | 2007, and continues to accrue at the rate of $6.58 per day until
25 | entry of judgment.

26 |     2.   Compensatory damages for the fair market value of the
27 | water used by Defendants in excess of the water needed to
28 | irrigate Defendants' wheat crop, which Plaintiff estimates to be

1   $86,400.

2       3.   Compensatory damages for the unpaid OA-353 variety seed
3   in the principal sum of $5,360.00, plus interest at the legal
4   rate of 10% per annum, which has accrued in the amount of
5   $2,056.53, as of October 24, 2007, and continues to accrue at the
6   rate of $1.47 per day until entry of Judgment.

7       4.   Compensatory damages for the unpaid OA-249 variety seed
8   in the principal sum of $29,100, plus interest at the legal rate
9   of 10% per annum which has accrued in the amount of $11,124.03,
10  as of October 24, 2007, and continues to accrue at the rate of
11  $7.97 per day until entry of Judgment.

12      5.   Compensatory damages in the amount of $8,222.70, for
13  the temporary water tank that Plaintiff was forced to buy because
14  the property did not have a functioning domestic well on the
15  property.

16      6.   Compensatory damages for the cost of installing a
17  functioning domestic well and pump in the sum of $22,640.24.

18      7.   Compensatory damages in the amount of $2,986.00, which
19  represents the cost of labor to remove the debris and dead
20  vegetarian caused by Defendants' shutting off of the domestic
21  water for the property.

22      8.   For compensatory damages in the amount of $81,824.31,
23  which represents the actual costs incurred by Plaintiff to repair
24  the agricultural well.   In addition, Plaintiff seeks compensatory
25  damages in the sum of $69,030 for costs incurred to drill a new
26  ag production well.

27      9.   For compensatory damages in the amount of $34,000,
28  which represents the costs Plaintiff incurred to rent sufficient

1  land to grow his cotton in 2005, as well as the costs of growing

2  same, which would otherwise not have been incurred but for

3  Defendants' planting of wheat on Plaintiff's property.

4      10.   For Defendants to be compelled to remove the air vents

5  along the easement or pay the costs of same and for Plaintiff to

6  be allowed to revoke the easement.

7      11.   Attorney's fees and costs in an amount to be determined

8  by the Court pursuant to post-trial motion.

9      **Defendants'**

10     12.   Defendants seek a judgment in their favor and against

11  Plaintiff.  To the extent Plaintiff is awarded any monetary

12  damages on the "Rent" or "Seed" claims, Defendants seek a set-off

13  in the amount of $43,519.44, representing the negative revenue

14  impact to Defendants in providing land and infrastructure to

15  Plaintiff for his nursery in 2003 and 2004.

16                  **VII.   DISPUTED ISSUES OF LAW**

17  **A.   Plaintiffs**

18     1.   Plaintiff asserts that Defendants materially breached

19  the Assignment (and incorporated purchase and sale agreement)

20  relating to the property when they represented to Plaintiff that

21  the property contained a domestic well, but then delivered the

22  property without the well as agreed.  "A cause of action for

23  damages for breach of contract is comprised of the following

24  elements: (1) the contract, (2) Plaintiff's performance or excuse

25  for nonperformance, (3) Defendants' breach, and (4) the resulting

26  damages to Plaintiff."  *Careau & Co. v. Security Pacific Business*

27  *Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.

28     2.   There is no dispute that a contract exists between the

                                12

parties, and that Plaintiff performed the same.  Defendants materially breached the agreement by delivering real property without a domestic well.  In connection with the purchase of the property, Plaintiff was informed by Defendants and Traci Dill, the appraiser from Farm West Credit, that the Property had a functional domestic well and pump.  This was subsequently memorialized in the Appraisal Report provided by Farm West Credit that indicated that the land possessed a functioning domestic well and pump.  Despite these representations, the property did not contain a functioning domestic well.  Defendants admit that there is not a functioning domestic well on the property, but deny ever making a representation to Plaintiff or anyone else that a domestic well was situated on the same.

3.   Based on the fact that there was no functioning domestic well, Plaintiff was forced to purchase a temporary water tank.  Moreover, all of the landscaping on the Property died, causing Plaintiff to have to remove the dead debris and most of the landscaping from his property to mitigate a fire hazard.

**Agricultural Well**.

4.   "Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the ... legal cause of the resulting injury."  *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594.  "Negligence is the failure to use reasonable care to prevent harm to oneself or to others.  A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful

13

1  person would do in the same situation."  Judicial Council of

2  California Civil Jury Instructions (2007) CACI No. 401.

3      5.    "As a general rule, *res ipsa loquitur* applies where the

4  occurrence of the injury is of such a nature that it can be said,

5  in the light of past experience, that it probably was the result

6  of negligence by someone and that the Defendant is probably the

7  person who is responsible.  In determining whether such

8  probabilities exist with regard to a particular occurrence, the

9  courts have relied both on common knowledge and on expert

10  testimony."  *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th

11  820, 825.  "[C]ertain kinds of accidents are so likely to have

12  been caused by the defendant's negligence that one may fairly say

13  'the thing speaks for itself" or, in Latin, "*res ipsa loquitur*."

14  *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825.

15  The doctrine of res ipsa loquitur, which evolved into a rule to

16  determine whether circumstantial evidence of negligence is

17  sufficient, has been codified as "a presumption affecting the

18  burden of producing evidence."  Evid. Code § 646, subd. (b).  For

19  this presumption to arise, three conditions must be satisfied:

20  (1) the accident must be of the kind that ordinarily does not

21  occur absent someone's negligence; (2) the cause or

22  instrumentality must have been within the defendant's exclusive

23  control; and (3) it must not have been due to the Plaintiff's

24  voluntary action or contribution.  *Brown v. Poway Unified School*

25  *Dist., supra*, 4 Cal.4th at 825-826; *Ybarra v. Spangard* (1944) 25

26  Cal.2d 486, 489.  When these prerequisites are met, the trier of

27  fact is allowed to assume the existence of the presumed fact

28  unless the defendant introduces evidence to the contrary.  *Brown,*

**14**

1   *supra*, at 826; Evid. Code §§ 604, 646, subd. (c).

2        6.   Prior to and after the close of escrow, Defendants

3   utilized Plaintiff's ag production well to irrigate their wheat

4   crop, which (as discussed below) is one of the outstanding issues

5   between the parties.  Plaintiff also alleges that Defendants used

6   the ag production well to irrigate Defendants' crops other than

7   the wheat crop, which Defendants deny.  There has been deposition

8   testimony by Ross and Mark Borba (as well as documentary evidence

9   from the Borbas) that the ag production well had been completely

10  repaired just before the close of escrow by which Plaintiff

11  acquired the property and that the well was "100%" and "as good

12  as new" at the time that escrow closed.  However, after

13  Defendants (who had exclusive use and control of the well)

14  relinquished control of the land back to Plaintiff, the

15  agricultural well was broken and no longer functioning.

16  Defendants admit to using the well, but deny that they broke it.

17  Instead, Defendants contend that the well was fully functional at

18  the time that they returned control over the land to Plaintiff.

19  Defendants have no documentation to support their claims.

20  Because a fully operational well does not simply become totally

21  inoperable in such a short period of time absent the user's

22  negligence or abuse, and because the well was in Defendants'

23  exclusive control between the close of escrow and the time in

24  which they relinquished the Property, and there exists no

25  evidence that Plaintiff contributed to the harm to the well,

26  Defendants' negligence can and must be presumed pursuant to the

27  doctrine of res ipsa loquitur, discussed above.

28        7.   To date, Plaintiff has incurred $81,824.31 in costs to

15

1  repair the well.  Further, additional costs of $69,030.00 will be

2  incurred to drill a new well.  In addition, by virtue of

3  Defendants' use of the well for crops other than the wheat crop,

4  Plaintiff contends he is entitled to compensation in the sum of

5  $86,400 for the water used by Defendants.

6       Past Invoices

7       8.   On or about March of 2003, O&A sold to Defendants 67

8  bags of cotton seed variety OA-353 PIMA and 388 bags of cotton

9  seed variety OA-249 for Defendants to use to their benefit.

10  Despite accepting the seeds and being invoiced for them,

11  Defendants failed and refused, and continue to fail and refuse,

12  to pay for them - in breach of the parties' agreement.

13  Defendants are liable for non-payment of these invoices under

14  theories of breach of contract and goods sold and delivered.

15  (The right to pursue the claim for unpaid seeds was assigned from

16  O&A to Plaintiff.)  The elements for a claim for breach of

17  contract are set forth above (see *supra* at VIII.A.2) and are

18  readily met here.  The elements for a claim in common count for

19  goods sold and delivered are:  (1) that Defendants requested, by

20  words or conduct, that Plaintiff deliver goods for the benefit of

21  Defendants; (2) that Plaintiff delivered the goods as requested;

22  (3) that Defendants have not paid Plaintiff for the goods; and

23  (4) the reasonable value of the goods that were provided.  CACI

24  371; *Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112

25  Cal.App.4th 950, 958.  Those elements, too, are met under the

26  present set of facts.

27       9.   Defendants allege that the parties had an agreement

28  that Defendants would not be charged for the seed.  Plaintiff

1  denies this alleged agreement and asserts that he is entitled to
2  immediate payment.

3      **Land Rent for Wheat Crop**

4      10.   As part of the Assignment, Plaintiff contends that he
5  was entitled to use the Property to grow cotton and, further,
6  that he had a verbal agreement with Defendants to grow the cotton
7  in exchange for a portion of the revenue generated by the sale of
8  the cotton.   Unbeknownst to Plaintiff, Defendants had planted a
9  wheat crop on the Property prior to the close of escrow.   Upon
10  learning of the wheat crop, Plaintiff questioned Defendants, who
11  remained silent on the issue until after the close of escrow, at
12  which time Defendants informed Plaintiff that they could not then
13  abandon the wheat crop and would agree to pay the reasonable
14  market value of rent for the Property until the wheat crop was
15  harvested.   Defendants agreed to pay $155 per acre or $24,025 for
16  the entire quarter, which included the use of water for the 155
17  acres of land.   Importantly, the parties further agreed that if
18  Defendants utilized additional water from Plaintiff's well, then
19  they would pay the rate of $110 per acre-foot.   Defendants
20  materially breached the terms of the oral agreement by failing
21  and refusing to pay the amounts previously agreed.

22      11.   Further, as a result of the wheat crop that Defendants
23  planted on the Property, Plaintiff was prevented from planting
24  his cotton crop since it had to be planted in April and the wheat
25  was still present.   Defendants' failure to plant Plaintiff's
26  cotton crop interfered with Plaintiff's prospective economic
27  advantage because Plaintiff would have been able to harvest the
28  cotton and sell it for a profit.   The elements of a claim for

17

interference with prospective economic advantage are as follows:   (1) an economic relationship between Plaintiff and a third party, with the probability of future economic benefit to the Plaintiff; (2) Defendant's knowledge of the relationship; (3) an intentional act by the Defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the Plaintiff proximately caused by the Defendant's wrongful act.  *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153-1154, *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1220.

12.   Moreover, despite Defendants' interference with Plaintiff's economic advantage, Defendants have refused to pay Plaintiff $24,025, which represents the agreed-upon land rent for the Property.   The elements for a claim of unjust enrichment are:   (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another.  *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726.   Defendants, thus, have received a benefit (*viz.*, agricultural land *sans* rent) and are unjustly retaining the same.   Prejudgment interest is due on said sum in the amount of $6,803.72 at the present time.

**Easement**

13.   Plaintiff granted an Easement to Defendants in or about January, 2005, that allowed Defendants to transport water from a well located on an adjacent parcel, across the Property, to Defendants' property.   In connection with this right, Defendants used a pipeline which ran across Plaintiff's property.   Pursuant to the terms of the Easement, Defendants were not to cause any

1   damage to the easement or create a hazard that could subject

2   Plaintiff to liability.  Despite the terms of the easement,

3   Defendants caused large air holes to be placed on the easement,

4   thereby creating a potential safety hazard and subjecting Olvey

5   to liability.  These large holes are contrary to the Easement and

6   constitute a material breach of the same.  The elements of a

7   claim for breach of contract have been outlined above.  Although

8   Olvey contends that the holes pose a safety hazard, and has asked

9   Defendants to remove the holes in accord with the Easement,

10  Defendants refuse.

11      **Attorneys' Fees and Costs**

12      14.  By the terms of the Assignment, the Borba Agreement was

13  incorporated in the Assignment.  In fact, Section 9 of the

14  Assignment provided in relevant part:

15              This Assignment and items incorporated herein
                (including without limitation the Sale
16              Agreement contain all of the agreements of
                the parties.
17

18  Thus, by the explicit terms of the Assignment, the terms of the

19  Borba Agreement became part of the Assignment.  Section 29 of the

20  Borba Agreement states in relevant part:

21              In the event of any action between Buyer and
                Seller...in connection with the Sale
22              Property, the prevailing party in such action
                shall be awarded its reasonable costs and
23              expenses, including, but not limited to,
                taxable costs and reasonable attorneys' fees.
24

25      15.  Based on the fact that the terms of the Borba Agreement

26  were incorporated into the Assignment, Plaintiff is entitled to

27  his attorneys' fees and costs from Defendants pursuant to

28  California Civil Code § 1717(a), which provides in material part:

1
2
3
4
5
6

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

7  Cal. Civ. Code § 1717(a).

8      16.  Defendants deny that Plaintiff is entitled to his

9  attorneys' fees and costs and allege that the foregoing

10 incorporation by reference argument is flawed.

11 B.  **Defendants**

12      **Domestic Well**

13      17.  Plaintiff's allegation that Defendants' materially

14 misrepresented the description if the Olvey parcel by

15 representing the existence of a domestic well on the property is

16 patently false and relies on impermissible extrinsic evidence to

17 contradict a fully integrated, unambiguous written document

18 thereby violating the Parol Evidence rule.  The "Parol Evidence"

19 rule bars extrinsic evidence (oral or written) of prior

20 contemporaneous agreements to *add to* or modify the terms of an

21 unambiguous "integrated" written instrument.  (See *Materson v.*

22 *Sine* (1968) 68 Cal.2d 222, 225, emphasis added.)  The law

23 presumes a written contract supersedes all prior or

24 contemporaneous oral agreements or representations . . . and

25 where the writing is integrated, the presumption <u>cannot</u> be

26 overcome."  *Wagner v. Glendale Adventist Med. Center* (1989) 216

27 Cal.App.3d 1379, 1385, emphasis added.  The central question in

28 determining integration is "whether the parties intended their

1   writing to serve as the exclusive embodiment of their agreement."

2   *Wagner v. Glendale Adventist Med. Center, supra*, 216 Cal.App.3d

3   at p. 1386.

4       18.   Section 3 of the Agreement ("No Warranties"), confirms

5   that:

6           Assignee has also had an opportunity to
            inspect the Property and is satisfied with
7           respect to the condition thereof" and that
            "the Assignee takes the assignment of the
8           Sales Agreement and the Escrow 'as is' and
            'where is' with no representations or
9           warranties from Assignor with respect to the
            Sale Agreement or the value or condition of
10          the Property."

11      19.   In section 9 of the aforementioned Agreement, entitled

12  <u>Entire Agreement</u>, it makes clear the parties' intent:

13          "This Agreement and items incorporated herein
            (including without limitation the Sale
14          Agreement) contain all of the agreements of
            the parties with respect to the matters
15          contained herein, and no prior agreement or
            understanding pertaining to any such matter
16          shall be effective for any purpose.  No
            provisions hereof may be amended or modified
17          in any manner whatsoever except by an
            agreement in writing signed by duly
18          authorized representatives of each of the
            parties."

19

20      20.   It is undisputed that the Olvey parcel does not contain

21  a domestic well.  Likewise, it is undisputed that the Assignment

22  makes no mention of a domestic well, but instead confirms Mr.

23  Olvey had inspected the property and purchased it "as is."  Mr.

24  Olvey read, understood and executed the Assignment in which he

25  now asserts does not represent the full agreement of the parties

26  despite the integration clause contained therein.  Mr. Olvey

27  seeks to <u>add an additional material term</u> to a fully integrated

28  written instrument for which his only evidence consists of

1   alleged oral representations made by Defendants.  Not only does

2   this proffered evidence make little sense, who would make the

3   promise of a domestic well that could be immediately disproved,

4   it is barred by the Parol Evidence Rule.  Therefore, Plaintiff's

5   breach of contract action fails as a matter of law.

6        **Agricultural Well**

7       21.  As Plaintiff so astutely explains, "Actionable

8   negligence involves a legal duty to use due care, a breach of

9   such legal duty, and the breach as the ... legal cause of

10   resulting injury."  Plaintiff's Points of Law, #2, *citing United*

11   *States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d

12   586, 594.

13       22.  Plaintiff testified at deposition that he had no

14   evidence that the Defendants damaged the engine/well, or why the

15   well failed.  Similar to the dismissed Confidentiality Agreement

16   claims, Plaintiff holds on to the belief that because Defendants

17   were the last ones to use it and it allegedly had problems when

18   Plaintiff first used it six months later, "they had to have done

19   something wrong."  Aside from Plaintiff's lay opinion, i.e.,

20   hunch, he admittedly has no evidence to support a finding that

21   Defendants were the cause of any problems with the well or

22   engine.

23       23.  Plaintiff, left with no evidence to establish a duty of

24   care nor expert testimony to establish a breach of said duty, is

25   left in the desperate position of now basing his negligence claim

26   in the doctrine of "*Res Ipsa Loquitur*."  With no evidence that

27   Defendants damaged the agricultural well, Plaintiff instead

28   attempts to misapply well stated law to a situation for which it

has no application.  In fact, Plaintiff fails to meet each of the three criteria under the *Res Ipsa Loquitur* Doctrine ("Doctrine").

   24.  First, the damage to the agricultural well is not of the sort that ordinarily does not occur absent someone's negligence.  Because the doctrine permits the jury to infer negligence from the happening of the accident alone, there must be a basis, either in common experience or expert testimony, for concluding that the occurrence of such an accident is more probably than not the result of negligence.  *Tomei v. Henning* (1967) 67 Cal.2d 319, 322.  Recognizing the danger involved in such a presumption, Courts have limited the doctrine's application based on lay testimony to only those extreme cases in which there can be no dispute as to the cause of damage.  In *Hale v. Venuto* (1982) 137 Cal.App.3d 910, the Court explained that, although there are many situations in which a lay person, without expert testimony, may infer as a matter of common knowledge that the injury would not have occurred unless someone was negligent [i.e., hospital left patient in second story room with unlocked window after suicide attempt, patient jumped out window], often the plaintiff must produce some expert testimony that would support an inference of negligence from the fact of the accident itself.  *Id.* at p. 918.  Federal courts have echoed this sentiment by explaining that expert testimony is generally unnecessary in situations in which the fact finder may find it obvious that the accident ordinarily does not occur without negligence [i.e., a sponge left in the patient's body following surgery].  On the other hand, expert testimony may be required "if the inference of negligence from the accident itself was

1    obvious only to an expert."  See *Smoot v. Mazda Motors of*

2    *America, Inc.* (7th Cir. 2006) 469 F.3d 675, 679-680.  In this

3    situation, it can be hardly suggested that this is the proverbial

4    "sponge left in the body" case for which the Doctrine was

5    developed.  Damage to a highly sophisticated agricultural well

6    requires, at a minimum, expert testimony related to the standard

7    of care, the breach and resulting damage.  Plaintiff has not

8    retained an expert to testify as to either the extent of the

9    damage or the potential cause of such damage.  In this situation,

10   lay testimony is not permitted to establish a standard of care

11   and certainly not the breach of the standard.  There are a myriad

12   of potential causes of the damage to a commercial agricultural

13   well, many of which do not involve negligence.

14        25.  Further, the agricultural well was not within the

15   exclusive control of Defendants.  Prior to April 1, 2005,

16   Defendants owned and operated the agricultural well and did not

17   owe Plaintiff a duty of any sort.  In fact, the only point in

18   time at which a duty of care could have possibly arisen from

19   Defendants to Plaintiff was between the months of April and July

20   of 2005.  Over the course of those four months, Plaintiff

21   operated the well *for less than one* month and delivered the well

22   in good, working condition.  *Eight months* after the Plaintiff

23   took possession and exclusive control of the well, damage to the

24   engine was allegedly noted.  *Over a year* after Defendants left

25   the property and turned over exclusive control of the engine and

26   well to Plaintiff, the gear head and well itself allegedly

27   sustained damage.  It is undisputed that Defendants did not have

28   exclusive control of the agricultural well and in fact, did not

**24**

1  operate the well for anywhere near the time Plaintiff operated

2  the well.   Therefore, Plaintiff fails to meet the second prong of

3  the doctrine.

4       26.   Finally, Plaintiff cannot reasonably assert that it did

5  not actively participate in any damage related to the

6  agricultural well.   Plaintiff's use and occupancy of the well

7  cannot be separated from Defendants' use and occupancy of the

8  well prior to July of 2005, thereby negating the third criteria

9  under the doctrine.   Further, there is no evidence outside of

10 Plaintiff's self-serving statements that Plaintiff did not

11 contribute to the well's damage or operate the well in some

12 manner which would increase the likelihood of damage thereby

13 establishing the need for expert testimony.   After the well was

14 repaired, Defendants used it for only one month and Plaintiff

15 admittedly used the well for "several months."   Ironically, the

16 inference of negligence, if at all, lies with Plaintiff.

17      27.   Desperately trying to hang onto his last potential

18 claim for negligence, Plaintiff makes the bald assertion that,

19 "... a fully occupational well does not simply become totally

20 inoperable in such a short period of time absent the user's

21 negligence or abuse..."   Unfortunately, the doctrine of *Res Ipsa*

22 *Loquitur* contains specific and heightened criteria to be applied

23 most of which only an expert could establish.   Not surprisingly,

24 Plaintiff has not retained an expert and has failed to meet each

25 and every element to input negligence as a matter of law onto

26 Defendants.

27      Past Invoices.

28      28.   Despite repeated demands, Plaintiff has failed to

25

1  produce a single writing signed by Defendants related to the
2  alleged agreements for the purchase of cotton seed OA-353 and OA-
3  249.  Without a writing signed by the party to be charged,
4  Plaintiff must proceed on the basis of an oral contract [at best]
5  for which the statute of limitations is two (2) years.  As the
6  invoices were allegedly sent in September of 2003, the cause of
7  action is barred as a matter of law and Plaintiff cannot recover
8  for the breach of the alleged *oral* contracts.[1]

9      29.  Further, Defendants object to the use of the invoices
10 under the Best Evidence Rule (F.R.E. 1002).  The invoices
11 produced appear to have been modified by Plaintiff with
12 handwritten inscriptions.  With this concern, Plaintiff cannot
13 produce an original copy of the invoices allegedly sent to
14 Defendants and is thereby barred from introducing the contents of
15 the documents.  (F.R.E. 1002).  Further, with regards to cotton
16 seed OA-353, Plaintiff has no writing whatsoever, modified or
17 otherwise, and is barred from introducing evidence of such at
18 trial.  When a disputed transaction is the result of a writing
19 central to the case and dispositive of the only disputed factual
20 issue, oral testimony cannot be substituted for the writing.  See
21 *Railroad Management Co., L.L.C. v. CFS Louisiana Midstream Co.*
22 (5th Cir. 2005) 428 F.3d 214, 219, fn.2.  Lastly, the alleged

23 _____

24     [1] Although Plaintiff has attempted to revive his claim under
   the Commercial Code, Plaintiff fails to produce a sufficient
25 writing signed by Defendants.  U.C.C. § 2-201 states, "... a
   contract for the sale of goods for the price of $500 or more is
26 not enforceable by way of action or defense unless there is some
   writing sufficient to indicate a contract for sale has been made
27 between the parties and signed by the party against whom
   enforcement is sought ..."
28

26

1   invoices representing a sale of cotton were never sent to nor

2   received by Defendants until late 2005, and cannot be used to

3   show Defendants' knowledge or acquiescence to the receipt of such

4   seed or support a breach of contract and/or common counts cause

5   of action.

6       **Land Rent for Wheat Crop**.

7       30.   Plaintiff correctly notes that to recover for the

8   "rent" allegedly owed, he must establish that it would be

9   "unjust" for Defendants to retain any purported benefit.  First,

10  while Defendants did originally suggest that they would consider

11  paying approximately $24,025 as rent for the time period the

12  wheat crop was being grown and harvested, that was based upon an

13  original closing date of January 2005 (i.e., rent for January

14  2005 through July 2005 harvest).  Instead, the closing did not

15  occur until April 1, 2005, i.e., the wheat was only on land owned

16  by Plaintiff for 3 months instead of the originally contemplated

17  6 months.  Moreover, the retention of any partial amount of the

18  full $24,025 which would be argued are still owed to Plaintiff

19  would not be "unjust" given the $42,000 in costs Defendants

20  provided to Plaintiff in past years pursuant to a long standing

21  agreement Plaintiff has chosen to ignore and repudiate by way of

22  this action.

23      **Easement**

24      31.   Putting aside there is a dispute as to whether the

25  easement is even on Plaintiff's property, Plaintiff has no

26  evidence that Defendants breached the easement.  The air vents

27  which Plaintiff complains of were already on the Property when

28  Plaintiff purchased it.  The only modifications made by

1    Defendants were to encase the vents in concrete to make them more

2    safe and less subject to damage which would flood Plaintiff's

3    property.   Far from breaching the easement, Defendants' actions

4    were required under the easement's terms to properly maintain the

5    easement and avoid causing floods or damage to Plaintiff's

6    property.

7         **Attorneys' Fees and Costs**.

8         32.   Defendants dispute that the attorney fee provision in

9    the Purchase and Sale Agreement (for actions between Buyer

10   (Errotaberes) and Seller (Borbas) somehow provides a basis for

11   the prevailing party in this action to recover its attorneys

12   fees.   The easement, however, does explicitly provide for the

13   recovery of attorneys' fees to the prevailing party.

14        33.   The above Points of Law were prepared prior to

15   receiving additional documents and theories of damages previously

16   withheld by Plaintiff, most of which Defendant's counsel received

17   only today.   In the event the Court does not exclude all of the

18   belatedly disclosed evidence, Defendants reserve their right to

19   supplement their Points of Law accordingly.

20                     **VIII.   ABANDONED ISSUES**

21        1.   The first through fourth claims for relief were

22   voluntarily dismissed by Plaintiff by way of a Request for

23   Dismissal pursuant to Federal Rules of Civil Procedure, Rule 15.

24   Other than this prior dismissal of claims, the parties are aware

25   of no abandoned issues, nor do they currently intend to abandon

26   any issues.

27                        **IX.   WITNESSES**

28   A.   **Plaintiffs**

                              28

1.   James M. Olvey
     c/o Kurt F. Vote
     McCormick, Barstow, Sheppard, Wayte & Carruth
     5 River Park Place East
     Fresno, CA 93720

2.   Daniel D. Errotabere
     c/o Scott Ivy, Esq.
     Lang, Richert & Patch
     5200 North Palm Avenue, 4th Floor
     Fresno, CA 93704

3.   Jean Errotabere
     c/o Scott Ivy, Esq.
     Lang, Richert & Patch
     5200 North Palm Avenue, 4th Floor
     Fresno, CA 93704

4.   Mark M. Borba
     5411 E. Atchison St.
     Fresno, CA 93727

5.   Ross Borba, Jr.
     5411 E. Atchison St.
     Fresno, CA 93727

6.   Traci Dill
     Senior Appraiser
     Farm Credit West Appraisal Services
     1111 W. Lacey Blvd.
     Hanford, CA 93230

7.   Kevin Lyne
     Farm Credit West
     531 North Alta
     Dinuba, CA 93618

8.   Daryl Bettencourt
     B & L Farms
     8775 14th Avenue
     Hanford, CA 93230

9.   Gary W. Sawyers
     6715 N. Palm Ave., Suite 116
     Fresno, CA 93704

B.   **Defendants**

1.   Dan Errotabere
     c/o Scott J. Ivy
     Lang, Richert & Patch
     5200 North Palm Avenue
     Fresno, CA 93704

///

29

1    2.    Jean Errotabere
           c/o Scott J. Ivy, Esq.
2          Lang, Richert & Patch
           5200 North Palm Avenue
3          Fresno, CA 93704

4    3.    Remi Errotabere
           c/o Scott J. Ivy, Esq.
5          Lang, Richert & Patch
           5200 North Palm Avenue
6          Fresno, CA 93704

7    4.    Eric Borges
           c/o Scott J. Ivy, Esq.
8          Lang, Richert & Patch
           5200 North Palm Avenue
9          Fresno, CA 93704

10   5.    Mark Borba
           5411 E. Atchison St.
11         Fresno, CA 93727

12   6.    Ross Borba
           5411 E. Atchison St.
13         Fresno, CA 93727

14   7.    Tracy Dill
           Farm Credit West Appraisal Services
15         1111 W. Lacey Blvd.
           Hanford, CA 93230
16
     8.    Daryl Bettencourt
17         B & L Farms
           8775 14th Avenue
18         Hanford, CA 93230

19   9.    James Olvey
           c/o Kurt F. Vote, Esq.
20         McCormick, Barstow, Sheppard, Wayte & Carruth
           5 River Park Place East
21         Fresno, CA 93720

22   10.   Doug Bradley
           Bradley Pump
23         3625 S. Highland
           Del Rey, CA
24
     11.   Nathan Ornellas
25         Nathan's Diesel Service
           17117 Iona Avenue
26         Lemoore, CA 93245

27   ///

28   ///

                                30

1       12.   Luis Cordova
              B & L Farms
2             8775 14th Avenue
              Hanford, CA 93230
3
4       13.   Burt Stevens
              Caruthers Engine Parts
5             2395 W. Tahoe
              P. O. Box 264
6             Caruthers, CA 93609

7       The above witnesses were identified prior to receiving

8  additional documents and theories of damages previously withheld

9  by Plaintiff, most of which Defendant's counsel received only

10 today.  In the event the Court does not exclude all of the

11 belatedly disclosed evidence, Defendants reserve their right to

12 supplement their exhibit list accordingly.

13      Counsel are each ordered to submit a list of witnesses to

14 the court along with a copy for use by the Courtroom Deputy

15 Clerk, on the same date and at the same time as the list of

16 exhibits are to be submitted as ordered below.

17      <u>CAUTION</u>

18      Counsel are cautioned that expert witnesses, including

19 percipient experts, must be designated as such.  No witness, not

20 identified as a witness in this order, including "rebuttal"

21 witnesses, will be sworn or permitted to testify at trial.

22            X.   EXHIBITS, SCHEDULES AND SUMMARIES

23      The following is a list of documents or other exhibits that

24 the parties expect to offer at trial.

25      <u>CAUTION</u>

26      Only exhibits so listed will be permitted to be offered into

27 evidence at trial, except as may be otherwise provided in this

28 order.  No exhibit not designated in this pretrial order shall be

                              31

marked for identification or admitted into evidence at trial.

A.    **Plaintiff's Exhibits**

1.    Fax from Jean Errobatere to Jim Olvey re germination tests on OA-249.  Bates stamped OA00263-00266.

2.    Errotabere Ranches 2003 field plans dated 4/1/03. Bates stamped OA00267-00268.

3.    State of California OA-265 Planting Locations for 2003 dated 8/6/03.  Bates stamped OA00270-00272.

4.    Fax from Jim Olvey to Jean Errotabere re OA-249 seed dated 8/19/03.  Bates stamped OA00273-00275.

5.    O&A Invoice No. 237606 for cotton seed sold to Rock'n JK Farms.  Bates stamped OA00256-00257.

6.    O&A Invoice No. 237607 for cotton seed sold to Summit Vista Farms dated 9/21/03.  Bates stamped OA00161.

7.    O&A Invoice No. 237608 for cotton seed sold to Westside Harvesting.  Bates stamped OA00254-00255.

8.    2004 Field Map.  Bates stamped 0A00269.

9.    Purchase and Sale Agreement and Escrow Instruction between Borbas and Errotabere Ranches dated 7/1/04.  Bates stamped ERR00316-00332.

10.    Borba Property Proposal dated 8/30/04.  Bates stamped OA00119.

11.    Memo from Errotabere Ranches to Jim Olvey re the Assignment of Right to Purchase Real Property dated 8/30/04. Bates stamped ERR00146.

12.    Assignment of right to Purchase Real Property between Errotabere Ranches and James Olvey dated 8/30/04.  Bates stamped ERR00267-00271.

13.   Memo from Errotabere Ranches to Jim re parcel map and preliminary report dated 9/14/04.  Bates stamped ERR00215.

14.   License agreement between Borbas and Jim Olvey dated 9/27/04.  Bates stamped ERR00277-00281.

15.   E-mail from Mark Borba re: well repair costs with attachments dated 10/29/04.  Bates stamped ERR00337-00343.

16.   License agreement between Borbas and Errotabere Ranches dated 12/4/04.  Bates stamped ERR00542-00550.

17.   Letter from Daniel Errotabere to Jim Olvey re receipt of $50,000 re assignment dated 12/13/04.  Bates stamped ERR00147.

18.   Fax transmittal sheet from Dan Errotabere to Jim Olvey attaching APN map and proposed easement for Borba dated 12/27/04.  Bates stamped OA00053-00066.

19.   E-mail from Ross Borba Jr. re: Olvey parcel dated 12/27/04.  Bates stamped ERR00220.

20.   Grant of easement (blank) between James Olvey and Errotabere Ranches dated 12/28/04.  Bates stamped OA00044-00052.

21.   E-mail from Tom Bozzo to Daniel Errotabere re: Borba-Errotabere-Olvey dated 1/11/05.  Bates stamped ERR00566.

22.   Letter from Kevin Layne, Farm Credit West, to James Olvey re approval of real estate loan dated 1/25/05.  Bates stamped 0A00180-00184.

23.   Grant deed - Borbas to Olveys dated 2/17/05.  Bates stamped OA00002-00006.

24.   Letter from Jim Olvey to Dan Errobatere re O&A's business plan for coming years dated 3/7/05.  Bates stamped ERR00141-00143.

25.   Fax transmittal sheet from Daniel Errotabere to Jim

1   Olvey re Borba purchase dated 3/8/05.  Bates stamped ERR00529-
2   00531.

3       26.   Fax transmittal sheet from Daniel Errotabere to Jim
4   Olvey re Borba purchase dated 3/9/05.  Bates stamped OA00124-
5   00125.

6       27.   Letter from Jim Olvey to Dan Errobatere re issue
7   surrounding purchase of land dated 3/11/05.  Bates stamped
8   ERR00153.

9       28.   Letter from Daniel Errotabere to Jim Olvey re Borba
10  purchase dated 3/15/05.  Bates stamped ERR00154-00157.

11      29.   Letter from Jim Olvey to Dan Errotabere re: Borba
12  purchase dated 3/18/05.  Bates stamped ERR00158-00159.

13      30.   Letter from Daniel Errotabere to Jim Olvey re
14  termination agreement dated 3/21/05.  Bates stamped ERR00160-
15  00161.

16      31.   Letter from Jim Olvey to Dan Errotabere re termination
17  agreement dated 3/22/05.  Bates stamped ERR00168.

18      32.   Handwritten note documenting phone calls to Jim Olvey
19  dated 3/29/05.  Bates stamped ERR00167.

20      33.   Letter from Daniel Errotabere to James Olvey re Borba
21  purchase dated 3/30/05.  Bates stamped ERR00169-00171.

22      34.   E-mail from Jim Olvey to Dan Errotabere dated 4/2/05.
23  Bates stamped ERR00172.

24      35.   E-mail from Daniel Errotabere to Jim Olvey dated
25  4/6/05.  Bates stamped OA00144.

26      36.   Letter from Daniel Errotabere to Jim Olvey re farming
27  of wheat field dated 4/6/05.  Bates stamped ERR00173-00174.

28      37.   Letter from Jim Olvey to Dan Errotabere re "loose ends"

relating to land transaction dated 4/10/05.  Bates stamped
ERR00175-00176.

38.  Letter from Kevin Layne, Farm Credit West to James
Olvey enclosing appraisal dated 11/24/04 (dated 4/11/05).  Bates
stamped OA00079-00092.

39.  Letter from Daniel Errotabere to Jim Olvey re Borba
purchase dated 4/18/05.  Bates stamped ERR00177-00179.

40.  Letter from Jim Olvey to Daniel Errotabere re Borba
purchase dated 5/9/05.  Bates stamped ERR00180-00181.

41.  O&A Invoice No. 05001 for "Rent Field – Wheat Only"
dated 5/21/05.  Bates stamped OA00033.

42.  O&A Invoice No. 05002 for "rent wheat field" to
Errotabere Ranches dated 6/8/05.  Bates stamped OA00034.

43.  Letter from Daniel Errotabere to James Olvey re
outstanding obligations dated 6/24/05.  Bates stamped ERR00183-
00186.

44.  Facsimile transmittal sheet from Daniel Errotabere to
Jim Olvey re outstanding obligations dated 7/8/05.  Bates stamped
ERR00187-00189.

45.  Facsimile transmittal sheet from Daniel Errotabere to
Jim Olvey re domestic water supply to Olvey's facility on Dickson
Ave. dated 7/15/05.  Bates stamped ERR00190-00191.

46.  Letter from James Olvey to Daniel Errobatere addressing
outstanding obligations dated 8/7/05.  Bates stamped ERR00192-
00193.

47.  Haynes Pumps invoice no. 10520 to O&A Enterprises for
new water storage system dated 10/27/05.  Bates stamped OA00007.

48.  Letter from Jim Olvey to Daniel Errotabere re

resolution of outstanding issues between O&A and Errotabere

Ranches enclosing checks dated 12/22/05.  Bates stamped ERR00199-

00204.

49.   E-mail from Gary Sawyers to Kurt Vote in response to

Jim Olvey's 12/22/05 letters dated 12/23/05.  Bates stamped

ERR00206-00207.

50.   Riverdale Ranch parcel maps.  Bates stamped OA00178-

00179.

51.   Costs for repairs to ag well dated 10/29/06.  Bates

stamped OA00276-00286.

52.   Costs for drilling new ag well dated 10/16/07.  Bates

stamped OA00259-00262.

53.   Costs for domestic well dated 10/19/07.  Bates stamped

OA00258.

54.   Photographs of property landscape before and after

water shut off.  Bates stamped OA00016-00032.

55.   Photograph of diesel pump that operates the Olvey

agricultural well.  Bates stamped OA00035.

56.   Photograph of diesel tank that supplies Olvey

agricultural well.  Bates stamped OA00036.

57.   Photograph of agricultural well and diesel tank.  Bates

stamped OA00037.

58.   Photo of Olvey agricultural well (pipes leading from

well irrigate fields).  Bates stamped OA00038.

59.   Photo of unknown meter attached to Olvey agricultural

well.  Bates stamped OA00039-00040.

60.   Photo of Errotabere Ranches water pipes on Olvey

property.  Bates stamped OA00041.

1     61.   Photo of Errotabere Ranches water pipe hooked to Olvey
2 agricultural well and watering Errotabere Ranches alfalfa field.
3 Bates stamped OA00042.

4     62.   Photo of Errotabere Ranches pipe connection.  Bates
5 stamped OA00043.

6     63.   Photo of old water meter.  Bates stamped OA00287.

7     64.   Photos of air vents.  Bates stamped OA00288-00289.

8     65.   Assignment of seed claims from O&A to Olvey.  Bates
9 stamped OA00290.

10    66.   Letter from Olvey to Daniel Errotabere re resolution of
11 outstanding issues enclosing checks dated 12/22/05.  Bates
12 stamped ERR00239-00242.

13    67.   Two checks payable to B&L Farms from O&A Enterprises
14 dated 4/21/05 and 11/30/05.  Bates stamped OA00291-00292.

15    68.   Frank Olvey's American Express statements for February,
16 March, April and May, 2005.  Bates stamped OA00293-00295.

17    69.   Exhibit A - origin and breeding history Acala OA-249.
18 Bates stamped OA00296.

19    70.   Kreger invoice dated 10/12/05.  Bates stamped OA00297.

20 B.    **Defendant's Exhibits** (Other than for impeachment purposes)

21    1.   Consulting Agreement (9/1/98) (OL-0001-0002).

22    2.   Fax from Jim Olvey to Jean Errotabere (3/1/04) (Exh. 3
23 to Plaintiff's deposition).

24    3.   Olvey check for deposit (8/04) (ERR00148-00149).

25    4.   Purchase Agreement (7/1/04) (ERR00316-00332).

26    5.   Assignment (8/30/04) (ERR00146-00271, ERR00261-265).

27    6.   Letter to James Olvey enclosing appraisal (4/11/05)
28 (OA-00134-00147).

7.    Borba license (12/4/04) (ERR542-550).

8.    Redacted version of Olvey correspondence (3/7/05) (OA00121-123).

9.    Handwritten notes (3/29/05) (OL-00118).

10.   Redacted version of Dan Errotabere letter (4/18/05 (ERR00177-178) (referencing only fax number and last paragraph re domestic water).

11.   Redacted version of Jim Olvey letter (5/9/05) (OL-00156-157) (referencing only first sentence and paragraph 4).

12.   Redacted version of Dan Errotabere letter (6/24/05) OL-00161-163) (referencing only fax number, "Domestic Water Service" paragraph, and (ii) at end of letter).

13.   Redacted version of Dan Errotabere letter (7/8/05) (OL-00168-170) (excluding "Settlement of 2004 and 2005" paragraph).

14.   Redacted version of Dan Errotabere fax (7/15/05) (OL-00171) (excluding last sentence re settlement).

15.   Easement (4/1/05).

16.   Grant Deed (4/1/05) (OA00002-00003).

17.   Repair invoices (4/28/05) (ERR00539).

18.   Rent invoice (5/21/05) (ERR00450).

19.   Rent invoice (6/8/05) (OA00162).

20.   Redacted version of Olvey letter (8/7/05) (OL-00137-174).

21.   Pictures of air vents regarding easement (ERR00293-298).

22.   Summary of financial impact 2003-2004 (produced with initial disclosures) and backup documentation.

23.   Various timelines re key dates and times (will be

38

1   exchanged prior to trial).

2       24.   Various blow-ups of deposition testimony, exhibits and
3   discovery responses (will be exchanged prior to trial).

4       25.   Diagram of property and parcels (will be exchanged
5   prior to trial).

6       26.   Cassette tape of voicemail from Plaintiff.

7       27.   Transcript of voicemail from Plaintiff (will be
8   exchanged at pre-trial conference).

9       28.   Declaration of James Olvey in opposition to motion for
10  summary adjudication.

11      29.   Redacted versions of surveys.

12      The above exhibits were prepared prior to receiving
13  additional documents and theories of damages previously withheld
14  from Plaintiff, most of which Defendants' counsel received only
15  today.  In the event the Court does not exclude all of the
16  belatedly disclosed evidence, Defendants reserve their right to
17  supplement their Exhibit list accordingly.

18                  XI.   DISCOVERY DOCUMENTS

19      Only specifically designated discovery requests and
20  responses will be admitted into evidence.  Any deposition
21  testimony shall be designated by page and line and such
22  designations filed with the Court on or before March 14, 2008.
23  The opposing party shall counter-designate by line and page from
24  the same deposition and shall file written objections to any
25  question and answer designated by the opposing party and filed
26  with the court on or before March 21, 2008.

27      Written discovery shall be identified by number of the
28  request.  The proponent shall lodge the original discovery

request and verified response with the courtroom deputy one day prior to trial.  The discovery request and response may either be read into evidence, or typed separately, marked as an exhibit, as part of the exhibit marking process, and offered into evidence.

**A.    Plaintiff's List**

1.    Defendants' Initial Disclosures pursuant to FRCP Rule 26(a)(1).

2.    Responses to Plaintiff's Requests for Admission (Daniel Errotabere & Errotabere Ranches) Set One.

3.    Responses to Plaintiff's Interrogatories (Daniel Errotabere & Errotabere Ranches) Set One.

4.    Responses to Plaintiff's Interrogatories (Jean Errotabere) Set One.

5.    Responses to Plaintiff's Request for Admissions (Jean Errotabere) Set One.

6.    Responses to Plaintiff's Request for Production of Documents (Daniel Errotabere & Errotabere Ranches) Set One.

7.    Responses to Plaintiff's Requests for Production of Documents (Errotabere Ranches) Set Two.

8.    Responses to Plaintiff's Request for Production of Documents (Daniel Errotabere) Set Two.

9.    Responses to Plaintiff's Request for Production of Documents (Jean Errotabere), Set Two.

10.    Responses to Plaintiff's Interrogatories (Jean Errotabere) Set Two.

11.    Responses to Plaintiff's Requests for Admission (Jean Errotabere) Set Two.

12.    Responses to Plaintiff's Interrogatories (Daniel

1   Errotabere & Errotabere Ranches) Set Two.

2       13.   Responses to Plaintiff's Request for Admission (Daniel
3   Errotabere & Errotabere Ranches) Set Two.

4   B.   Defendant's List

5       1.   Plaintiff's Initial Disclosures pursuant to Rule 26.

6       2.   Plaintiff's Responses to Request for Documents Set One.

7       3.   Plaintiff's Responses to Request for Documents, Set
8   Two.

9       4.   Amended Expert Witness Designation of Plaintiff James
10  Olvey.

11      5.   Plaintiff's Responses to Special Interrogatories, Set
12  One.

13      6.   Plaintiff's Supplemental Responses to Special
14  Interrogatories, Set One.

15      7.   Plaintiff's Responses to Requests for Admission, Set
16  One.

17      8.   Plaintiff's Supplemental Responses to Requests for
18  Admission, Set One.

19                    XII.   STIPULATIONS

20      1.   The parties agree that a stipulation to the
21  authenticity of documentary evidence will further the efficient
22  resolution of this case.  Plaintiff further proposes that the
23  parties should address and deal with evidentiary objections
24  before trial begins.

25                  XIII.   AMENDMENTS - DISMISSALS

26      1.   The parties have no amendments or dismissals at this
27  time.  Plaintiff, however, does reserve the right to amend his
28  operative complaint according to proof at trial, if necessary.

                         41

1    Moreover, depending upon the contents of the disputed survey

2    identified above (which Plaintiff still cannot ascertain due to

3    Defendants' continued refusal to produce same), Plaintiff may

4    need to amend, add parties to and/or dismiss certain claims for

5    relief.

6                    XIV.   FURTHER TRIAL PREPARATION

7    A.    Trial Briefs.

8         Counsel are directed to file a trial brief in this matter on

9    or before March 25, 2008.  No extended preliminary statement of

10   facts is required.  The brief should address disputed issues of

11   substantive law, disputed evidentiary issues of law that will not

12   be resolved in limine, and any other areas of dispute that will

13   require resolution by reference to legal authority.

14   B.    Duty of Counsel To Pre-Mark Exhibits.

15        1.    Counsel for the parties are ordered to meet and conduct

16   a joint exhibit conference on March 10, 2008, at 1:30 p.m. at the

17   law offices of Lang, Richert & Patch, 5200 North Palm, 4th Floor,

18   Fresno, California, for purposes of pre-marking and examining

19   each other's exhibits and preparing an exhibit list.  All joint

20   exhibits will be pre-marked JX1-JX100; all of the plaintiff's

21   exhibits will be pre-marked with numbers 101-150; all of

22   defendant's exhibits will be pre-marked with numbers 151-200.

23        2.    Each and every page of each and every exhibit shall be

24   individually Bates-stamped for identification purposes, and

25   paginated with decimals and arabic numerals in seriatim; i.e.,

26   1.1, 1.2, 1.3 . . ..

27        3.    Following such conference, each counsel shall have

28   possession of four (4) complete, legible sets of exhibits, for

1  use as follows:

2        a.   Two (2) sets to be delivered to the Courtroom
3  Deputy Clerk, Alice Timken, no later than 4:00 p.m. on March 28,
4  2008, an original for the court and one for the witness.

5        b.   One (1) set to be delivered to counsel for the
6  opposing party and one (1) set to be available for counsel's own
7  use.

8     4.   Counsel are to confer to make the following
9  determination as to each of the exhibits proposed to be
10  introduced into evidence and prepare separate indexes, one
11  listing joint exhibits, one listing each party's exhibits:

12        a.   Joint exhibits, i.e., any document which both
13  sides desire to introduce into evidence, will be marked as a
14  joint exhibit (JX), and numbered JX1-___.  Joint exhibits shall
15  be listed as such in the exhibit list in a column that notes they
16  are admitted into evidence without further foundation;

17        b.   As to any exhibit, not a joint exhibit, to which
18  there is no objection to its introduction into evidence, the
19  exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's
20  Exhibit ___ in evidence, and will be listed in the exhibit list
21  as the exhibit of the offering party;

22        c.   The exhibit list shall include columns for noting
23  objections to exhibits.  The first column will list any
24  objections as to foundation; i.e., Plaintiff's Foundation 2 -
25  "not authenticated."

26        d.   The exhibit list shall include a second column for
27  noting substantive objections to exhibits based on any other
28  grounds; i.e., "hearsay, improper opinion, irrelevant."

**43**

1          e.   The exhibit list shall include a description of
2   each exhibit on the left-hand side of the page, and the three
3   columns outlined above (as shown in the example below).

4                        **List of Exhibits**

5                        Admitted      Objection      Other

6   **Exhibit #    Description   In Evidence    To Foundation    Objection**

7

8

9          f.   The completed exhibit list shall be delivered to
10  the Courtroom Deputy Clerk on or before March 28, 2008, at 4:00
11  p.m., P.S.T.

12         g.   If originals of exhibits cannot be located, copies
13  may be used, however, the copies must be legible and accurate.
14  If any document is offered into evidence that is partially not
15  legible, the Court sua sponte will exclude it from evidence.

16  C.   Discovery Documents.

17       1.   Counsel shall file a list of discovery documents with
18  the Courtroom Deputy Clerk at the same time and date as the
19  witness and exhibit lists are lodged with the Courtroom Deputy
20  Clerk, unless the discovery documents are marked as exhibits,
21  which counsel intend to use at trial by designating by number,
22  the specific interrogatory, request for admission, or other
23  discovery document.  Counsel shall comply with the directions of
24  subsection XII (above) for introduction of the discovery document
25  into evidence.

26  D.   Motions In Limine.

27       1.   The motions in limine shall be filed by March 14, 2008,
28  and any responses shall be filed by March 24, 2008.  The Court

                                44

will conduct a hearing on motions in limine in this matter on March 27, 2008, at 12:15 p.m. in Courtroom 3, Seventh Floor, before the Honorable Oliver W. Wanger United States District Judge, at which time all evidentiary objections, to the extent possible, will be ruled upon, and all other matters pertaining to the conduct of the trial will be settled.

E.   **Trial Documents**.

1.   **Exhibits To Be Used With Witness**.  During the trial of the case, it will be the obligation of counsel to provide opposing counsel not less than forty-eight hours before the witness is called to the witness stand, the name of the witness who will be called to testify and to identify to the Court and opposing counsel any exhibit which is to be introduced into evidence through such witness that has not previously been admitted by stipulation or court order or otherwise ruled upon, and to identify all exhibits and other material that will be referred to in questioning of each witness.  If evidentiary problems are anticipated, the parties must notify the court at least twenty-four hours before the evidence will be presented.

F.   **Counsel's Duty To Aid Court In Jury Voir Dire**.

1.   Counsel shall submit proposed voir dire questions, if any, to the Courtroom Deputy Clerk at atimken@caed.uscourts.gov on or before March 28, 2008, at 4:00 p.m.  Counsel shall also prepare a joint "statement of the case" which shall be a neutral statement, describing the claims and defenses for prospective jurors, to be used in voir dire.

2.   In order to aid the court in the proper voir dire examination of the prospective jurors, counsel are directed to

lodge with the Court the day before trial a list of the prospective witnesses they expect to call if different from the list of witnesses contained in the Pre-Trial Order of the Court. Such list shall not only contain the names of the witnesses, but their business or home address to the extent known.  This does not excuse any failure to list all witnesses in the Pre-Trial Order.

3.   Counsel shall jointly submit, to the Courtroom Deputy Clerk, on or before March 28, 2008, by 4:00 p.m., a neutral statement of the claims and defenses of the parties for use by the court in voir dire.

G.   Counsel's Duty To Prepare And Submit Jury Instructions.

1.   All proposed jury instructions shall be filed and served on or before March 28, 2008, by 4:00 p.m.  Jury instructions shall be submitted in the following format.

2.   Proposed jury instructions, including verdict forms, shall be submitted via e-mail to dpell@caed.uscourts.gov formatted in WordPerfect for Windows 10.  Counsel shall be informed on all legal issues involved in the case.

3.   The parties are required to jointly submit one set of agreed upon jury instructions.  To accomplish this, the parties shall serve their proposed instructions upon the other fourteen days prior to trial.  The parties shall then meet, confer, and submit to the Court the Friday before the trial is to commence, one complete set of agreed-upon jury instructions.

4.   If the parties cannot agree upon any instruction, they shall submit a supplemental set of instructions designated as not agreed upon by March 28, 2008, at 4:00 p.m.

46

1        5.      Each party shall file with the jury instructions any
2    objection to non-agreed upon instructions proposed by any other
3    party.   All objections shall be in writing and shall set forth
4    the proposed instruction objected to in its entirety.   The
5    objection should specifically set forth the objectionable matter
6    in the proposed instruction and shall include a citation to legal
7    authority explaining the grounds for the objection and why the
8    instruction is improper.   A concise statement of argument
9    concerning the instruction may be included.   Where applicable,
10   the objecting party shall submit an alternative proposed
11   instruction covering the subject or issue of law.

12       6.      Format.   The parties shall submit one copy of each
13   instruction.   The copy shall indicate the party submitting the
14   instruction, the number of the proposed instruction in sequence,
15   a brief title for the instruction describing the subject matter,
16   the test of the instruction, the legal authority supporting the
17   instruction, and a legend in the lower lefthand corner of the
18   instruction: "Given," "Given As Modified," "Withdrawn" and
19   "Refused" showing the Court's action with regard to each
20   instruction and an initial line for the judge's initial in the
21   lower right-hand corner of the instruction.   Ninth Circuit Model
22   Jury Instructions should be used where the subject of the
23   instruction is covered by a model instruction.

24       7.      All instruction should be short, concise,
25   understandable, and neutral statements of the law.   Argumentative
26   or formula instructions will not be given, and should not be
27   submitted.

28       8.      Parties shall, by italics or underlining, designate any

47

modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

9.    Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form.  Verdict forms shall be submitted to the Courtroom Deputy Clerk on the first day of the trial.

10.    Failure to comply with these rules concerning the preparation and submission of instructions and verdict forms may subject the non-complying party and/or its attorneys to sanctions.

## XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR PRESENTATION OF EVIDENCE

1.    If counsel intends to use a laptop computer for presentation of evidence, they shall <u>contact Alice Timken, Courtroom Deputy Clerk, at least one week prior to trial</u>.  The Courtroom Deputy Clerk will arrange a time for any attorney to bring any laptop to be presented to someone from the Court's Information Technology Department, who will provide brief training on how the parties' electronic equipment interacts with the court's audio/visual equipment.  If counsel intend to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

2.    ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL BE REFERRED TO THE COURTROOM DEPUTY CLERK.

48

1

**XVI.   FURTHER DISCOVERY OR MOTIONS**

2     1.   Please see Disputed Evidentiary Issues above for

3  Motions in Limine.  Several additional issues have arisen which

4  may require Court intervention to decide prior to trial.

5     **Survey/Easement Issue**

6         **Plaintiff's Position**

7     2.   Plaintiff intends to move for a continuance of the

8  trial or evidentiary/issue sanctions based upon what Plaintiff

9  contends is Defendants' belated disclosure of the issue of

10  whether the disputed easement is actually on Plaintiff's property

11  and what Plaintiff contends is Defendants' failure to produce a

12  copy of the survey Defendants have obtained which purports to

13  demonstrate that the western boundary of Plaintiff's property is

14  actually located some 300 feet east of where the parties

15  understood, and the pertinent maps represented, that boundary to

16  be.[2]  Plaintiff will also seek an Order from the Court requiring

17  production of the survey.

18     3.   If that survey is accurate, not only would the disputed

19  easement not be located on Plaintiff's property (potentially

20  rendering that issue moot), but Plaintiff will have to relocate

21  his new production ag well, which Plaintiff contends will cause

22  further costs to be incurred and will delay the installation of

23  said well beyond the current trial date.  Moreover, if that

24  survey is accurate, both Plaintiff and Defendants will have

25  potential claims related to their original acquisition of their

26  _____

27     [2] A copy of the e-mail exchange between counsel related to
this issue is attached to the Joint Pretrial Statement as Exhibit
28  "A" for the Court's reference.

1  parcels from the Borbas since neither Plaintiff nor Defendants

2  will have actually received title to the parcels they were told

3  they were purchasing at the time.  Plaintiff requests that the

4  Court establish a briefing schedule for said Motion at the Pre-

5  Trial Conference.

6      **Defendants' Position**

7      4.  Plaintiff's attempt to obtain a briefing schedule for a

8  continuance motion based on Defendants' "belated disclosure of

9  the issue of whether the disputed easement is actually on

10  Plaintiffs' property" is simply a recognition that Plaintiff

11  and/or his counsel are not prepared for trial.

12      5.  One of the claims in the Complaint was that Defendants

13  have breached an easement by which they were allowed to transport

14  water across Plaintiff's property via an existing underground

15  pipeline.  Defendants' initial disclosures were served on

16  September 29, 2006.  In November 2006, during an unrelated survey

17  of other properties, Defendants learned the actual easement may

18  not in fact be on Plaintiff's property.  Specifically, Defendants

19  learned that it was possible that the actual property line for

20  both Defendants and Plaintiff's property may lie 300 feet east of

21  where the parties previously understood it to be.  Given that

22  neither Defendants nor Plaintiff would be benefitted by

23  publicizing the fact they may be occupying a small slice of

24  someone else's property, at that time Defendants did not intend

25  to use the survey to support its claims or defenses.

26  Nonetheless, out of an abundance of caution, Defendants own

27  counsel had Defendant Jean Errotabere disclose on the record at

28  his deposition in October 2007 that the survey had been done and

1  that it appeared the easement may not be on Plaintiff's property.

2  [Exhibit B is a copy of the relevant testimony].[3]  As Defendants

3  did not want to voluntarily disclose the surveyor they used,

4  Defendants' counsel reviewed all prior discovery requests and

5  responses and confirmed that the production of the survey was not

6  required absent further requests.  Over the next four months, no

7  formal or informal request was made for the production of the

8  surveys.

9      6.   In February of 2007, Defendants learned that Plaintiff

10 was planning to drill a new ag well in the area they had

11 previously disclosed may be over his property line.  Rather than

12 remain silent and let him drill a well on someone else's

13 property, as was their right given they had already voluntarily

14 disclosed the issue, Defendants again voluntarily reminded

15 Plaintiff's counsel that this area was likely not on Plaintiff's

16 property.  Defendants' reward for their good deed?  Indications

17 from Plaintiff's counsel that he would seek to recover the costs

18 of moving the well from Defendants and a request for a

19 continuance of the trial and "evidence/issue sanctions" for

20 failure to disclose the issue sooner.  Defendants request that

21 the Court hold an evidentiary hearing at the Pretrial Conference

22 for the purposes of denying Plaintiff's request for a continuance

23 and confirming the April 1, 2008, trial date.

24

25

_____

26   [3] Plaintiff's suggestion that either he or Defendants have a
   claim against the Borbas because they were "shorted" is again
27 simply wrong given that the land currently occupied under the
   originally mistaken line actually provided each with "more" land
28 than they purchased.

1   **7.   Solely to now allow Plaintiff to use this issue as a**

2   **means to obtain a continuance, Defendants have decided to provide**

3   **him with a redacted copy of the survey.**

4   **Plaintiff's Recent Document Production**

5   **Defendants' Position**

6   **8.   Plaintiff's initial disclosures were served on**

7   *September 28, 2006,* **identifying all documents he may use at trial**

8   **and all damages he was aware of to date.   On** *May 4, 2007*,

9   **Plaintiff served his responses to Defendants' First Set of**

10  **Requests for Production of Documents.   The requests included**

11  **demands that Plaintiff produce all documents supporting**

12  **Plaintiff's seed sale claims, documents evidencing the invoices**

13  **were actually issued in 2003, documents evidencing the fact that**

14  **the seed was delivered to Defendants, as well as all documents**

15  **evidencing damages sought on the ag well claims.   Plaintiff's**

16  **response to each of these requests was the same: "All responsive,**

17  **non-privileged, documents are attached."   On** *October 17, 2007*,

18  **Plaintiff served his responses to Special Interrogatories seeking**

19  **all facts, witnesses and documents concerning delivery and**

20  **receipt of the invoices and seed, and facts, witnesses, and**

21  **documents supporting the ag well claims.   Defendants' counsel**

22  **conducted his discovery and trial preparation based upon**

23  **Plaintiff's responses to these requests.**

24  **9.   On Saturday,** *February 23, 2008*, **two days before the**

25  **Joint Pretrial Statement was due, Plaintiff's counsel sent an**

26  **email containing 35 "additional" exhibits to be referenced in the**

27  **statement.   None of these documents were produced or referenced**

28  **in the initial disclosures in September 2006, produced in**

1    response to document demands in May 2007, nor referenced in
2    Plaintiff's response to Special Interrogatories in October 2007.
3    The "additional" documents included *2003* invoices relating to the
4    seed claims, faxes to and from Plaintiff and Defendants in *2003*
5    purportedly expressly referencing the seed and invoices that are
6    the subject of this claim, and numerous new documents evidencing
7    purported damages relating to the ag well claim.

8         10.   On Monday, *February 25, 2008*, upon returning to his
9    office from a deposition, Defendants' counsel was faced with a
10   stream of emails from Plaintiff's counsel producing even more
11   never-before-seen documents, most of which are clearly intended
12   for Plaintiff's case-in-chief on liability and damages and a
13   majority of which had never been produced in this action until
14   several hours before the Joint Pretrial Statement was due to be
15   filed.   In connection with numerous new damage documents (most of
16   which pre-date this action let alone the date of the initial
17   disclosures), Plaintiff's counsel, just hours before filing this
18   brief, also included an entirely new category of damages
19   (Plaintiff's Relief #9), which was not referenced in the initial
20   disclosures, in discovery, or in any prior version of the Joint
21   Pretrial Statements exchanged over the past 10 days.

22        11.   Given the clear basis to exclude these documents given
23   Plaintiff's conduct, this last minute production is again simply
24   another method by which Plaintiff is attempting to delay a trial
25   they are ill-prepared for, i.e., argue to the Court that the
26   property remedy is to continue the trial to allow Defendants
27   further discovery of these issues.   The Court should not condone
28   these tactics and gamesmanship.   Defendants have waited over two

1  years to have this nightmare end, and have diligently prepared
2  their case for trial in reliance on Plaintiff's counsel honoring
3  their discovery and ethical obligations, and conversely honored
4  all of their discovery and ethical obligations in allowing
5  Plaintiff's counsel to be similarly prepared, should they choose
6  to do so.  Defendant has conducted its discovery, trial
7  preparation, witness lists, and exhibit list based upon the
8  damages and documents at issue.  To now allow Plaintiff to spring
9  numerous new documents and damage theories at this stage would be
10  severely prejudicing Defendants and condoning that conduct to the
11  extent Plaintiff suggests a continuance is the proper remedy.
12  The Court should exclude all documents, exhibits, and testimony
13  concerning the matters which Plaintiff has raised over the past
14  several days and allow Defendants to proceed with the scheduled
15  trial and finally put this matter behind them.

16       **Plaintiff's Position**.

17       12.  In response to Defendants' argument above, Plaintiff
18  produced the additional documents upon discovery in accordance
19  with his continuing obligation to produce documents relevant to
20  his claims in this action (something which Plaintiff notes that
21  Defendants fail and refuse to do, with respect to the survey
22  issue addressed above).  Further, some of the documents
23  complained about by Defendants were introduced as exhibits during
24  depositions in this matter.  As to those documents, which were
25  actually provided during a deposition (as opposed to obliquely
26  referenced to), Defendants cannot claim that there was an
27  inadequate prior disclosure.
28  ///

1

### XVII.   SETTLEMENT

2     1.   The parties attended a mandatory settlement conference

3 before Magistrate Snyder on October 16, 2007.  Ultimately, the

4 settlement conference proved unfruitful and did not result in the

5 resolution of this action.  The parties have not further explored

6 settlement following the settlement conference.

7          XVIII.   SEPARATE TRIAL OF ISSUES

8     1.   None.

9          XIX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

10     1.   No experts.

11               XX.   ATTORNEYS' FEES

12     1.   Plaintiff will seek contractual attorneys fees by way

13 of a post-trial motion should he prevail on any claim arising out

14 of his agreement with Defendants.  Defendants dispute that a

15 basis for the recovery of attorney's fees exists and deny that

16 either party would be entitled to attorney's fees in this action,

17 other than with respect to the easement.

18             XXI.   ESTIMATE OF TRIAL TIME

19     1.   Three days.

20                XXII.   TRIAL DATE

21     1.   April 1, 2008, 9:00 a.m., Courtroom 3, Seventh Floor.

22     XXIII.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES

23     1.   There will be eight jurors, four peremptory challenges

24 per side.

25       XXIV.   AMENDMENT OF FINAL PRETRIAL ORDER

26     1.   The Final Pretrial Order shall be reviewed by the

27 parties and any corrections, additions, and deletions shall be

28 drawn to the attention of the Court immediately.  Otherwise, the

Final Pretrial Order may only be amended or modified to prevent manifest injustice pursuant to the provisions of Fed. R. Civ. P. 16(e).

**XXV.   MISCELLANEOUS**

1.   Not applicable.

IT IS SO ORDERED.

**Dated:    March 5, 2008           /s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE